385 So.2d 214 (1980)
STATE of Louisiana
v.
John WILLIAMS a/k/a Kwablah Mthawabu a/k/a Edward Johnson.
No. 66630.
Supreme Court of Louisiana.
June 23, 1980.
*215 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James D. Caldwell, Dist. Atty., John D. Crigler, Asst. Dist. Atty., for plaintiff-appellee.
Raymond L. Cannon, Tallulah, for defendant-appellant.
DIXON, Chief Justice.
This case arises from an incident in which four armed men wearing stocking masks entered the Earl Lessley residence just outside of Waterproof, Louisiana. The men tied up the Lessley children who were alone in the house and began to search for valuables. When the children's parents returned from a shopping trip, Earl Lessley was shot by one of the intruders with a 16 gauge shotgun. Mrs. Lessley was tied up and prevented from aiding her wounded husband. The men left the house in Lessley's car, taking with them Earl Lessley's wallet, several guns and an old coin collection. Earl Lessley died from his wounds that same night.
Lee Andrew Carroll, Cornelius Washington and Darnell Washington were arrested in connection with the crime. Based on information they gave the police the defendant was also arrested and subsequently prosecuted for armed robbery. At the defendant's trial, Cornelius Washington testified that he, Willie Washington, Lee Andrew Carroll and Rowan Williams (the defendant's son) were the ones who had entered the Lessley home that night, but that the defendant had participated in the planning of the crime and had supplied the weapons used. He also was said to have received some of the money that was stolen. Willie Washington and Darnell Washington gave similar testimony. Ten of the twelve jurors found the defendant to be guilty of armed robbery, and he was sentenced to serve fifty years at hard labor without benefit of parole, probation or suspension of sentence.
The defendant has argued five of his seven assignments of error to this court.

ASSIGNMENT OF ERROR NO. 1
Prior to trial, the defendant filed a motion to change venue, based on alleged prejudice in the public mind against him, arising from journalistic accounts of the crime *216 and his arrest. The defendant assigns the trial court denial of that motion as error.
C.Cr.P. 622 provides:
"A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial."
In order to obtain a change of venue a defendant must prove more than a mere knowledge by the public of the facts surrounding the offense. The burden of proof is on the defendant to show that such prejudice exists in the collective mind of the community that a fair trial cannot be obtained. State v. Felde, 382 So.2d 1384 (La.1980); State v. Simmons, 381 So.2d 803 (La.1980); State v. Sonnier, 379 So.2d 1336 (La.1980).
In State v. Bell, 315 So.2d 307, 313 (La. 1975), this court noted that:
"... The defendants were entitled to a change of venue if they could show, even though it would be possible to select a jury whose members were not subject to a challenge for cause, that there were influences in the community which would affect the answers of jurors on the voir dire, or the testimony of witnesses at the trial, or that, for any other reason, a fair and impartial trial could not be obtained in the parish. Defendants had a right to the opportunity to adduce evidence to show that racial and religious passions in the community (demonstrated in the `dry run' voir dire before us) would prevent a fair and impartial trial."
In the instant case, the record amply supports the trial court's conclusion that it was possible to empanel an impartial jury in Tensas Parish. Although of the twelve persons questioned in a "dry run" voir dire, five indicated in some way that they thought that the defendant was guilty, only one prospective juror testified that she thought that she would have to find the defendant guilty no matter what the evidence. The other prospective jurors expressing an opinion indicated that they would be impartial and decide the case on the evidence.
All of the prospective jurors questioned in the "dry run" voir dire indicated that they had some knowledge of the crime, obtained for the most part from the newspapers and television. The press coverage might therefore be considered extensive within the limited geographical area involved. The press coverage does not appear from the record, however, to have been of such a nature as to render it impossible for the defendant to get a fair trial. All but one of the newspaper articles introduced by the defendant at the hearing on the motion were purely factual accounts, either of the crime, the ensuing investigation, or the defendant's arrest and subsequent indictment.[1] The involvement of the police or the prosecutor in the pretrial publicity was limited to the release of the facts of the crime and the investigation, and the appearance of police officers in newspaper photographs and a television news segment on the crime. No one representing the state expressed an opinion as to the defendant's guilt or innocence. All but one of the articles introduced appeared within two weeks of the defendant's arrest (from June 13, 1979 to June 27, 1979). The remaining article, which reported simply that the defendant had been indicted, appeared on *217 July 25, 1979. The trial did not begin until some two more months had passed, on September 26, 1979.
In light of the noninflammatory nature of the pretrial publicity, and the fact that most of the publicity appeared some three months before trial, the pretrial publicity was not so extensive or prejudicial that the trial court erred in denying the defendant's motion.
That conclusion is supported by the defendant's failure to introduce at the hearing any direct evidence of any widespread prejudice against the defendant by examination of the prospective jurors. None of the persons questioned testified that they felt any public pressure to modify or hide their feelings about the defendant on voir dire examination. Several of them stated that the defendant should and could get a fair trial in Tensas Parish. There was no evidence of any events in the community at large that would indicate that the community or the individuals in it were prejudiced against the defendant.
The defendant having failed to show that he could not get a fair trial in Tensas Parish, either by showing prejudicial pretrial publicity or evidence of prejudice on the part of prospective jurors, the trial court did not abuse its discretion in denying the motion to change venue.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 6
By this assignment the defendant contends that the trial court erred in denying his challenge for cause of juror Michael Grover. Grover had approached the trial judge and stated that he was a friend of a man who had been the victim of a theft in which the defendant had been implicated. When questioned in court, however, Grover indicated that he had been seeking to be excused from jury duty so that he could see to his crops. He stated affirmatively that he could give the defendant the benefit of every reasonable doubt, and that he could set aside whatever personal feelings he had about the case.
Before the denial of a challenge for cause will be considered reversible error on appeal, the defendant must show that the denial was error and that he exhausted all of his peremptory challenges. State v. McIntyre, 381 So.2d 408 (La.1980); State v. Allen, 380 So.2d 28 (La.1980). A trial court is vested with broad discretion in ruling on challenges for cause, and its ruling will not be disturbed on appeal absent a showing of abuse. State v. McIntyre, supra; State v. Allen, supra.
In the instant case, the trial court did not abuse its discretion. Grover stated that he would follow the instructions of the court to give the defendant the benefit of every reasonable doubt, and to put aside his personal feelings. In addition, he stated that he did not feel that he would have difficulty with his friends if, after listening to the evidence, he voted not guilty. The defendant was unable to impeach his statements that he originally approached the judge and told him of his friendship with the theft victim in order to escape jury duty to take care of his crops. The record does not support the defendant's argument that the state coached Grover as to his answers. It was not an abuse of the trial court's discretion to deny the defendant's challenge for cause.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
The defendant assigns as error the trial court's denial of a motion to suppress evidence seized in a search of the defendant's house. The fruits of that search included the shotgun that was used to kill Lessley and other incriminating evidence. The search was conducted pursuant to a search warrant issued on the basis of an affidavit by a police officer which recounted statements made by Lee Andrew Carroll and Darnell Washington. The affidavit indicated that the two men had admitted their involvement in the Lessley case. Carroll was said to have told the affiant that he had taken the shotgun to the defendant's house after the killing and left it there. Washington was said to have admitted placing *218 the shotgun and other weapons in the cesspool on the Williams property.
In challenging the search the defendant argues that the statements made by Carroll and Washington to the police were involuntary and illegal, and that a search warrant obtained on the strength of involuntary statements is invalid.
In State v. Bouffanie, 364 So.2d 971 (La.1978), this court considered the question of whether one against whom evidence was acquired by the use of involuntary statements of a third person has standing under our Constitution to challenge the admission of the evidence on the ground of the violation of the third person's rights. We did not reach an answer to that question, however, because we concluded that the defendant in that case had not made the showing necessary for suppression if he did have standing. We noted that under C.Cr.P. 703 a defendant bears the burden of proving the grounds of a motion to suppress. An exception to that rule is that the state must prove that confessions are free and voluntary beyond a reasonable doubt before they can be admitted into evidence at the trial on the merits, but we noted that that exception does not apply if the statement is not to be admitted. We therefore concluded that if a defendant did have standing to challenge the voluntariness of statements of a third person, because evidence obtained as a result of those statements was to be used against the defendant, the defendant would bear the burden of proving that the statements were involuntary. We further indicated that in such cases the same procedure and burden of proof would apply as govern challenges to the truthfulness of factual statements in an affidavit. Under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), in such cases the defendant must show by a preponderance of the evidence that the statements should not be considered, and, that, with the objectionable material removed, the affidavit's remaining content is insufficient to establish probable cause.
In the instant case, the defendant did not prove by a preponderance of the evidence that the statements made by Carroll and Washington were not free and voluntary. Carroll testified at the motion to suppress that the statements were voluntary and that they were not made under pressure or threats. The officers who questioned him testified in the same vein. Although Carroll did give some testimony that would indicate that the statements were not voluntary, he could not say for certain that those factors affected the voluntariness of the statements, and then stated that the statements were in fact voluntary. The trial court did not err in concluding that Carroll's statements were voluntary.
In addition, the search warrant was supported by the statements of Darnell Washington, even if Carroll's statements are excised. The record contains no evidence indicating that Washington's statements were not voluntary. Since the search warrant was supported by the voluntary statements of Washington, the trial court was not in error in denying the defendant's motion to suppress.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3
After he was indicted the defendant filed a motion for a preliminary examination, which was denied. The defendant claimed that the examination was necessary for the perpetuation of testimony and the reduction of bail. C.Cr.P. 292 provides that the court shall order a preliminary examination at the defendant's request in felony cases unless the defendant has been indicted by a grand jury, and, in addition, that the court may order such an examination in felony cases whether or not an indictment has been returned. That provision therefore vests discretion for the granting of postindictment preliminary examination in the trial court. C.Cr.P. 296 provides that a preliminary examination held after indictment shall be limited to the perpetuation of testimony and the fixing of bail.
According to the defendant, he was prejudiced by the denial of the preliminary examination *219 because he was thereby prevented from eliciting testimony from the men who claimed to have been involved in the crime with him for purposes of cross-examining them at trial. The defendant was therefore not seeking to perpetuate testimony (that is, to preserve it in case a witness became unavailable or unable to testify) but was instead seeking to use the examination as a means of discovering information that would help his case. The defendant also claims that to deny him a preliminary examination denies him equal protection of the law, because those charged by means other than an indictment have a right to such an examination.
In State v. Qaulls, 377 So.2d 293, 296 (La.1979), this court noted that the right to a preliminary examination is primarily designed to determine if probable cause exists to hold an accused in custody or under bail pending trial. We rejected the use of the preliminary examination as a means of discovery beyond the discovery statute, C.Cr.P. 716-723. We stated:
"Thus, the role of the grand jury in the context of this case was to determine probable cause to hold defendant, a procedure involving twelve citizens chosen from a cross section of the community charged with the responsibility and authority delegated by the law to grand jurors. Such a procedure is well-designed to protect the accused from an overbearing government prosecutor or false accusations. Before an indictment is returned this body must be satisfied that probable cause exists that the accused committed the crime and should be held for trial to defend himself. Therefore, the insistence on a preliminary hearing is ordinarily not justified after indictment, for it can only serve then as a discovery device beyond the permissible limits prescribed by the Discovery and Inspection statute. There is, therefore, no constitutional right to a preliminary hearing where an indictment has been rendered. Harris v. Estelle, 487 F.2d 1293 (5th Cir. 1974); United States v. Anderson, 481 F.2d 685 (4th Cir. 1973); United States v. LePera, 443 F.2d 810 (9th Cir. 1971); United States v. Coley, 441 F.2d 1299 (5th Cir. 1971); United States v. Conway, 415 F.2d 158 (3rd Cir. 1969); State v. Singleton, 253 La. 18, 215 So.2d 838 (1968), and cases cited therein...."
It was therefore not error for the trial court to deny the defendant's motion for a preliminary examination for the purpose of discovering the state's evidence and gathering material to be used to impeach the state's witness.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 4
During the defendant's trial, Cornelius Washington was questioned as to the defendant's participation in the crime. The witness described a meeting at the defendant's house at which plans were made for gaining entry into the Lessley home and robbing its occupants. The defendant provided the participants with guns from a cache of weapons hidden under his bathtub. A defense objection to the questioning was overruled, and the defendant assigns the admission of the testimony as error.
The basis for the defendant's objection to the testimony is not altogether clear. When the objection was made, defense counsel contended that the testimony was hearsay and that the proper foundation had not been made for admission of declarations of a coconspirator against the defendant. The so-called coconspirator exception to the rule of exclusion of hearsay testimony is provided for in R.S. 15:455.[2] The effect of that statute is to allow the introduction of statements made out of court by a coconspirator of the defendant, if the statements *220 were made in furtherance of the conspiracy, provided that first a prima facie case of conspiracy is established. See, e. g., State v. Matthews, 354 So.2d 552 (La.1978); State v. Bell, 346 So.2d 1090 (La. 1977). See also, Comment, The Coconspirator Exception to the Hearsay Rule: The Limits of Its Logic, 37 La.L.Rev. 1101 (1977). Statements admitted under the exception are used to prove the guilt of the defendant.
In the instant case, there was no attempt made to introduce testimony of out of court statements by the coconspirator to show the guilt of the defendant. Instead, the defendant's accomplice was himself called to the stand and testified as to what he had seen and heard. Because there was no attempt by the state to admit evidence under the coconspirator exception of R.S. 15:455 to the hearsay rule, it was not error for the trial court to admit the evidence objected to without the requisites of the statute being met.
It is possible that the defendant's objection was directed to the fact that in recounting the events leading up to the intrusion into the Lessley home, the witness repeated the defendant's instructions to the participants to use force, if necessary. Even if the defendant's objection can be construed to have been addressed to the possible hearsay nature of such testimony, the objection would be unfounded, because the defendant's statement was part of the res gestae of the crime for which he was being prosecuted.
The defendant was charged with being a principal to the armed robbery of Earl Lessley. R.S. 14:24 defines principals as:
"All persons concerned in the commission of a crime, whether present or absent and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
Therefore, the defendant's acts in participating in the planning of the crime, of providing weapons and a staging area, and of counseling the others to use force are the very acts for which he was being prosecuted. Res gestae is defined by R.S. 15:447, which provides:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
In addition, R.S. 15:448 provides:
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
In the instant case, the words of the defendant which were repeated by the witness, to the effect that force was to be used if necessary, were necessary incidents to the criminal acts for which the defendant was charged, of having aided and counseled the other men in committing the acts constituting the offense of armed robbery. Such spontaneous acts and words of the accused were admissible as part of the res gestae.
This assignment of error is without merit.
For the reasons assigned, the conviction and sentence of the defendant are affirmed.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice, dissenting.
Defendant's assignment of error No. 1 has merit. In my view the trial court committed reversible error by not granting defendant's motion for a change of venue.
The black defendant, a leader of the "Republic of New Africa," was charged and convicted of the armed robbery which resulted in the death of Earl Lessley, Jr., a white male, in the same small rural parish where the victim lived and was murdered. The local media ran almost weekly stories about the crime in the three months between defendant's arrest and trial in which defendant's leadership role in the Republic *221 of New Africa organization received prominent coverage. A local newspaper ran a front page story on June 21, 1979, headlined "Waterproof hopes `Reign of Terror' Over" in which it was reported that defendant was widely feared in the community and that many local residents felt that recent burglaries had been for the purpose of obtaining arms for a small army commanded by defendant.
Shortly before trial there was renewed publicity about the crime. On September 12, 1979, twelve days before trial, the denial of defendant's change of venue motion was front page news in a local newspaper. Nine days before trial it was reported that his co-defendant pleaded guilty of the second-degree murder of the armed robbery victim, Earl Lessley. Two days later another local paper carried a story that his co-defendant had received a life sentence for the murder of Earl Lessley.
At the "dry-run" voir dire held at the motion to change venue five of the twelve persons called stated that they believed defendant was guilty and one woman testified that she did not believe that defendant could receive a fair trial. Later at the voir dire prior to trial seven persons testified that their minds were made up that defendant was guilty.
The foregoing indicates that the prejudice in the community against defendant created by the extensive pre-trial publicity about the crime and defendant prejudiced defendant's right to a fair trial. C.Cr.P. art. 622. Therefore, I respectfully dissent.
NOTES
[1] The exception is an article that appeared in the June 21 edition of the Concordia Sentinel, a newspaper published in Concordia Parish with a limited circulation (estimated to be around 500) in Tensas Parish. The article reported that many persons in Waterproof were relieved that the defendant and other persons had been arrested for a number of crimes in the area, which many believed were attributable to the defendant. At his motion for a new trial the defendant filed additional articles which were similarly factual accounts of developments in the case.
[2] "Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established." R.S. 15:455.