419 So.2d 951 (1982)
STATE of Louisiana
v.
Doyle Max QUIMBY.
No. 81-KA-3106.
Supreme Court of Louisiana.
September 7, 1982.
*954 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Don C. Burns, Dist. Atty., Russell Woodward, Asst. Dist. Atty., for plaintiff-appellee.
Thomas K. Brocato, Gravel, Robertson & Brady, Alexandria, for defendant-appellant.
WILLIAM NORRIS, Justice Ad Hoc.[*]
Defendant was charged by separate bills of information with possession of methamphetamine with intent to distribute and the manufacture of methamphetamine [a Schedule II drug] in violation of La.R.S. 40:967(A)(1). Defendant was tried solely on the manufacturing charge after which the jury unanimously found him guilty as charged.[1] The Court subsequently sentenced him to serve nine years at hard labor and to pay a fine of $5000. It is from this conviction and the resulting sentence that defendant appeals asserting seven assignments of error, six of which are incorporated into three arguments.

FACTS
On April 4, 1980, defendant and Ovis Staggs were arrested for selling methamphetamines to Richard Rubac at the residence of Robert Worley, an admitted drug dealer, in Georgetown, Texas. Thereafter, Staggs confessed to the manufacturing of methamphetamine with defendant and provided law enforcement personnel with the location of the laboratory used therefor in Caldwell Parish, Louisiana. This information was relayed to the officials of the Louisiana State Police and the Caldwell Parish Sheriff's Office who obtained a warrant to search the property owned by defendant based not only on this information but also on information gathered through a nine month active investigation of the defendant and Staggs. The warrant was executed by the Louisiana State Police on April 8, 1980.
The search of the silver metal portable building and a mobile home located on the property described in the warrant produced various chemicals, equipment and paraphernalia known to be used in the manufacturing of methamphetamine. Additionally two jars containing a mixture of amphetamine and methamphetamine were found. Thereafter, a warrant was issued for defendant's arrest; he was extradited from Texas; and the instant trial on the manufacturing charge resulted.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
In these assignments of error, defendant argues that the trial court erred in permitting introduction of an inculpatory statement not disclosed in the state's response to a motion for discovery filed by the defendant. More particularly, the testimony objected to was that of Robert Worley relating to a statement that defendant had made to him in Texas.
Defendant was initially charged on April 17, 1980. On January 26, 1981 [seven days prior to trial], defendant, through his second attorney of record[2], filed a "Motion *955 for Discovery and Independent Examination of Evidence." Of particular pertinence to this discussion is paragraph (3) of that motion which requested:

3.
The court order the district attorney to inform the defendant of the existence of any oral confession or statement of any nature made by the defendant, which the district attorney intends to offer in evidence at trial with the information as to when, where and to whom such oral confession or statement was made.
The state filed its answer to the discovery motion on January 27, 1981, in accord with the court's order that it respond not later than January 29, 1981. The response to paragraph (3) read as follows:
The state does not have any knowledge of any oral confession or statement of any nature made by the defendant which the district attorney intends to offer in evidence at the trial of this matter. However, in an abundance of caution the state does wish to inform the defendant that it is possible that Ovis Staggs will be a state's witness in this matter with the purpose of his testimony being when and how he and the defendant made methamphetamine and what the defendant's intention in doing so was.
On January 30, 1981, the state filed a second supplemental answer to defendant's motion for discovery in which it stated:
In an abundance of caution the state wishes to advise the defendant of its intent to offer into evidence the sale by the defendant of a substance which he represented to be methamphetamine to Robert Worley and Richard Rubac in or around Georgetown, Texas, on April 4, 1980. The purpose of this evidence is to show that the defendant possessed the methamphetamine which was found in Caldwell Parish with the intent to distribute. The sale spoken of in this answer is within the knowledge of the defendant and his counsel as it was outlined in the search warrant which is a part of the record in this case.
On the morning of trial [February 2, 1981], the state filed a "Prieur Notice" stating that it intended to offer evidence that the defendant and Staggs had traveled to the residence of Robert Worley on April 4, 1980, for the express purpose of selling a substance which defendant represented to be methamphetamine. Simultaneously and prior to the opening statement, the state filed a La.C.Cr.P. Art. 768 notice that stated:
Although the state feels that the inculpatory statements which it intends to introduce are not those requiring notice under Article 768, in an abundance of caution they wish nevertheless to inform the defendant of their existence. On April 4, 1980, the defendant before his arrest made statements to Robert Worley at Worley's residence that he had some more methamphetamine back at his lab which he would bring to Texas within a few days.
In his opening statement, the prosecutor stated:

* * * * * *
Now, we are going to call a witness who knows Mr. Quimbya man who can link Mr. Quimby with the manufacture of methamphetamine, with manufacturing speed. Now, our witness is not exactly a Sunday School teacher. People involved in criminal activities rarely associate with Sunday School teachers. We submit that drug dealers in particular don't associate well, the people they associate with are probably somewhat less than your top-notch citizens. We don't claim that our witness is. But our witness, Mr. Robert Worley, will show that he knew that Mr. Quimby had a drug lab.
The defense objected, the jury was removed, and defendant argued that this was an improper advertence to a confession in an opening statement. However, from the foregoing, it is obvious that the state did not advert in the opening statement to a confession or inculpatory statement but only informed the jury that its witness would testify that he knew defendant and that he knew that he had a drug lab. This *956 statement does not violate La.C.Cr.P. Art. 767[3], and the prosecutor's remarks were proper.
Thereafter, on direct examination and over the objection of defense counsel, Robert Worley testified as follows:
Q. How long have you known Mr. Quimby?
A. Approximately two years.
Q. On the night of April 4, 1980, I ask you to go back to that night, did you have an occasion on that night to speak with Mr. Quimby?
A. Yes, I did.
Q. And did he talk to you that night about manufacturing methamphetamine?
A. Yes, he did.
Q. And where did he say this had been manufactured?
A. In his lab.
* * * * * *
Defendant argues that the trial court erred in allowing Worley to testify about a "confession" made by the defendant when no notice was given to the defendant of the state's intent to use such confession and the "confession" was not supplied to defendant in compliance with his discovery motion.
La.C.Cr.P. Art. 716 provides in pertinent part:
* * * * * *
B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
* * * * * *
La.C.Cr.P. Art. 768 states as follows:
If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
A confession admits the commission of a crime, whereas the inculpatory statement admits a fact, circumstances, or involvement which tends to establish guilt or from which guilt may be inferred. As used in Article 768, the term inculpatory statement refers to the out-of-court admission of incriminating facts made by a defendant after the crime has been committed. It relates to past events. State v. Brumfield, 329 So.2d 181 (La.1976).
According to Worley's testimony, the defendant did not admit the commission of the instant crime, i.e., the manufacture of methamphetamine, but only asserted that methamphetamine had been manufactured in his [defendant's] lab. Therefore, defendant's oral assertion was an inculpatory statement, not a confession.
Equally apparent is that the statement was clearly within the purview of La.C.Cr.P. Art. 716(B). Therefore, the state was obligated to inform the defendant of the existence of the oral statement with corresponding information relative to when, where and to whom such statement was made. State v. Bonanno, 373 So.2d 1284 (La.1979). By virtue of its second supplementary answer of January 30, 1981, the state did put the defense on notice that it intended to introduce evidence of the sale to Worley of a substance represented to be methamphetamine in or around Georgetown, Texas, on April 4, 1980. Additionally, on the day of trial, the Article 768 notice was filed. Considering the fact that the defense motion for discovery was not filed until January 26, 1981, or received by the state until January 27, 1981, it would be ludicrous to accuse the state of tardiness or *957 delaying tactics. Furthermore, defendant has failed to show that he has prejudiced by the state's failure to provide the information by January 29, 1981, rather than February 2, 1981, a mere four days later. Under the statute, defendant was not entitled to the content of the statement but only to notice of its existence as well as when, where and to whom it was made. State v. Quincy, 363 So.2d 647 (La.1978). This information was adequately contained in the second supplemental answer and the timely filed "768 Notice."
If the defendant had suffered any prejudice by the filing at this time, he should have filed a motion for a continuance. This he did not do. Because defendant has failed to show any real prejudice resulting from the late response, there is no reversible error. State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Norwood, 396 So.2d 1307 (La.1981).
Our conclusion that these assignments of error are meritless is further supported by the fact that the defense failed to properly assert the basis for its objection to the admissibility of the statement under the auspices of La.C.Cr.P. Art. 716 and its further failure to seek the remedies afforded by La.C.Cr.P. Art. 729.5[4] which are applicable in cases of failure to comply with discovery statutes. Therefore, the trial court was not given the opportunity to properly rule on the objection which was solely objected to on the basis that the statement was inadmissible hearsay, that it almost amounted to a confession, and that no advance notice was given.
As we stated in State v. Bonanno, supra, at pages 1288-1289;
... However, in the instant case, Dorman's arguments that the court erred in not excluding the evidence concerning his telephone statements or declaring a mistrial based on the state's failure to provide mandated pretrial discovery are unavailing. Notwithstanding his status as the moving party in connection with the discovery motion, the defendant did not provoke a hearing at which the trial court could have been called upon to judge the sufficiency of the state's response. Therefore, even though a defense request was couched in language which literally tracked the statute (clearly indicating entitlement to a response to the request for the information sought), Dorman did nothing to call to the court's attention the need for, and his entitlement to, an order mandating the discovery of the information sought. Dorman's inaction effectively deprived the trial judge of an opportunity to make a ruling which would have prevented the commission of error. Even though the discovery motion is a written motion, in connection with which an objection is ordinarily not required to permit the urging of error on appeal (C.Cr.P. art. 841), the accepted procedure utilized in connection with discovery motions, as in the case of applications for particulars, virtually precludes the court's scrutiny unless the defense provokes a hearing to dispute the sufficiency of the state's response and thus causes the matter to be brought to the court's attention.
Furthermore, during the course of trial when the focus of the state's examination clearly disclosed it would present evidence which the defense had a right to discover prior to trial the defense not only declined to argue the clear provisions of Article 716 which would have evidenced the merit of its objection, but failed to seek the remedies afforded by Code of Criminal Procedure Article 729.5 in the case of a failure to comply with the discovery statutes. At that juncture, had defense more fully articulated the right he asserted and the basis for that right, the trial judge could have elected to permit *958 discovery at that point and grant a recess, if one was deemed necessary, to allow defense the opportunity to prepare to meet the evidence. We conclude that by failing to object, in any way to the state's response, by failing to state for the court during trial his basis for complaining of the lack of discovery, and by failing to request the trial court to grant one of the remedies provided by article 729.5 for failing to comply with the discovery rules, Dorman effectively waived his right to be afforded any relief on appeal.
(Citations and footnotes omitted.)
We therefore conclude in the instant case as we did in Bonanno, that the defendant by his failure to object to the state's response to his motion for discovery, to state clearly for the trial court his basis for complaint, and to request the granting of any of the remedies afforded by La.C. Cr.P. Art. 729.5 for failure to comply has effectively waived his right to complain on appeal in connection therewith.
Additionally, we have held that even if the state had failed to notify the defendant of an inculpatory statement, the error may be harmless if the remaining evidence of guilt is overwhelming. State v. Perry, 408 So.2d 1358 (La.1982). In the instant case, the drugs and paraphernalia found on defendant's premises as a result of the search combined with the testimony of the state's expert witness and the defendant's admission that he manufactured the drugs even though he contended that he did not know what he had made constitutes overwhelming evidence of the defendant's guilt.
These assignments of error lack merit.

ASSIGNMENTS OF ERROR NOS. 4 AND 5
In these assignments of error, defendant contends that the trial judge erred in denying his motion for new trial on the grounds that newly discovered evidence revealed that the probable cause basis for the search warrant was based on an illegally obtained confession of Ovis Staggs, Jr. He additionally contends that the trial judge erred in refusing to allow him to file a motion to suppress prior to sentencing but after conviction in connection with a hearing on his motion for a new trial.
Defendant argues that he did not discover that the affidavit in support of the issuance of the search was based on the illegally induced confession of Staggs[5] until after trial. As we read the record, defense counsel[6] in reality does not contend that he has actual knowledge that the confession of Staggs was illegally obtained but argues "on information and belief, to me, I have alleged that it contains on the fact of it, certain inducements, coercions, impelling questions, etc..."
The search warrant with its supporting affidavit was filed of record on April 25, 1980, and all counsel for defendant acknowledged that the information contained therein was readily available to them shortly thereafter. The affidavit clearly states in pertinent part:
That within the past 24 hours, two suspects, Doyle Max Quimby and Ovis L. Staggs, Jr., were arrested in the state of Texas while in possession of a large quantity of methamphetamine. Upon subsequent questioning, after being properly advised of his constitutional rights, suspect Ovis L. Staggs, Jr., related the following information to Louisiana State Police Trooper Robert Ellis, who was present during the arrest... (Emphasis added.)

As stated above, defendant does not contend that he had no knowledge of Staggs' "confession" or that he was unaware that it constituted the main thrust of the probable cause for the issuance of the warrant which resulted in the search of his facilities with *959 the accompanying seizure. Rather his contention is that until after trial he lacked sufficient "information and belief" on which to file a motion to suppress the evidence seized. This newly discovered evidence of Staggs' illegally obtained confession based on "information and belief" also forms the basis for defendant's motion for new trial which was denied by the trial judge.
La.C.Cr.P. Art. 703(C) provides in part as follows:
* * * * * *
C. A motion filed under the provisions of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial. (Emphasis added.)
La.C.Cr.P. Art. 521 provides:
Pre-trial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate.
Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pre-trial motions.
It is abundantly clear from the above quoted statutes that the motion to suppress is a pre-trial motion which, at the latest, may be filed during trial if opportunity therefor did not exist prior to trial or if neither the defendant nor his counsel was aware of the existence of the evidence or the grounds for the motion or if the failure to file the motion was otherwise excusable. Article 703 does not permit such a motion to be filed after trial.
In the instant case, the defendant did not file a motion to suppress prior to trial or during trial. Instead, he objected to some of the evidence offered at trial on the grounds of relevance.
When tangible objects are sought to be excluded from evidence on the basis of an unconstitutional search or seizure, a defendant must timely file a motion to suppress such evidence. Otherwise, he is deemed to have waived any objection to its admission based on an infirmity in the search and seizure. Since no motion to suppress was timely filed in the instant case defendant cannot now complain on appeal that the objects were seized pursuant to an unconstitutional search. State v. Williams, 362 So.2d 530 (La.1978); State v. Johnson, 333 So.2d 286 (La.App.1976).
Therefore, the trial court's ruling refusing to allow defendant to file the untimely motion to suppress at the hearing on the motion for new trial was not error. Ample opportunity existed for a timely filing of the motion. The fact that the confession existed and was used as the probable cause basis for the search warrant was known or should have been known to the defendant and his respective counsel shortly after his arrest. Under the particular facts presented by this case, there are no excusable grounds for defendant's failure to timely file such a motion.
La.C.Cr.P. Art. 851 provides in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
*960 In essence, what defendant attempted to do via the vehicle of a motion for new trial was to conduct a motion to suppress hearing and if that failed, to file an untimely motion to suppress. Both procedures are clearly prohibited under our procedural structure. We have recently held and again hold that raised for the first time in a motion for new trial or other post trial motion, constitutional objections under the Fourth Amendment and La. Constitution Article I § 5 are clearly untimely. See State v. Bolton, 408 So.2d 250 (La.1982).
We further, therefore, conclude that the alleged "new and relevant evidence" which defendant asserts does not withstand the "due diligence test" of La.C. Cr.P. Art. 851 for the reasons discussed prior. Simply stated, the "newly discovered evidence", if any, could have been discovered prior to trial with the exercise of due diligence on the part of defense counsel.
The law is well settled that the proposed newly discovered evidence must not only be newly discovered but also not discoverable by reasonable diligence before the verdict for it to justify the granting of a new trial. State v. Motton, 395 So.2d 1337 (La.1981). The decision on a motion for new trial rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. Molinario, 400 So.2d 596 (La.1981). The trial court was correct in its ruling.
Additionally, we note that defense counsel argues that had he proved Staggs' confession was illegally induced or obtained, that this undoubtedly would have resulted in the evidence resulting from the search being suppressed citing State v. Bouffanie, 364 So.2d 971 (La.1978); and State v. Williams, 385 So.2d 214 (La.1980). These cases do not stand for the proposition that a defendant has standing to attack a search warrant based in necessary part on an illegally obtained confession of another. However, this issue has been squarely addressed in State v. Singleton, 376 So.2d 143 (La. 1979).
In Singleton, a juvenile was not adequately informed of his rights prior to his being questioned by the police. His questioning implicated defendant in several burglaries and described items stolen in the burglaries as well as where defendant had hidden them. Armed with this information, the officers obtained a search warrant for the defendant's mother's home and retrieved the stolen goods. On appeal with regard to the suppression of the evidence, we stated as follows:
Undoubtedly, Grogan [the juvenile] could have complained that his statement and the evidence secured as a result thereof should be suppressed as having been obtained in violation of his constitutional rights; however, the question is whether the defendant has standing to challenge the violation of Grogan's rights.
We believe that he does not have such standing.
The basis for warnings required by the Fifth Amendment is the privilege against self-incrimination and that privilege is not violated when the information elicited from an unwarned suspect is not used against him. People v. Varnum, 66 Cal.2d 808, [59 Cal.Rptr. 108] 427 P.2d 772 (1967). For that reason, the noncoercive questioning of Grogan was not in itself unlawful, and could have legally been used as probable cause for the issuance of a search warrant. Accordingly, if the search warrant was lawfully obtained, the evidence secured thereby was not in violation of defendant's Fourth Amendment constitutional rights. (376 So.2d at 145.)
For all of the above reasons, these assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 5, 6, AND 7
In these assignments of error, defendant objects to his sentence as being excessive and claims that the trial judge erred in his consideration of the guidelines of La.C.Cr.P. *961 Art. 894.1[7] in that he failed to consider that the forty-four year old defendant is handicapped and has no prior convictions.
Upon conviction, defendant was exposed to a maximum imprisonment at hard labor for not more than ten years and a fine of not more than $15,000. The actual sentence imposed was nine years at hard labor and a fine of $5,000.
In the instant case, the trial court allowed defense counsel access to the pre-sentence report and stated at the sentencing hearing that he had considered the sentencing guidelines set forth in Article 894.1. It noted that although possessing only a ninth grade education and being handicapped, defendant had, through self-education, taught himself to manufacture high quality methamphetamine, an extremely complex drug, from a well equipped field laboratory that he had set up on his property in rural Caldwell Parish. The court further noted that the pre-sentence investigation revealed that defendant was part of a well-organized drug ring and was one of the major suppliers of methamphetamine to East Texas. The quantity of the drug seized was noted in support of the court's conclusion that the drug was not manufactured for self use. Additionally, the court noted the lack of evidence of any motive, provocation or excuse for the manufacturing other than profit and the harmful effects of the drug which had been made available to a wide range of individuals. Although defendant had no prior criminal record, he never admitted his wrong and expressed no remorse for his actions. Because the trial court had the benefit of hearing the evidence adduced at trial, there is a sufficient basis to accept his conclusions as being valid.
Defendant does not dispute the trial court's conclusions but argues erroneously that the trial judge did not consider the defendant's handicap and ability to respond to probationary treatment. As evidenced by his considerations and conclusions, the trial judge not only considered these factors but adequately explained why they did not warrant a less severe sentence. Furthermore, no effort was made at the sentencing hearing to rebut the factual considerations on which the sentence was based.
Article I § 20 of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. Accordingly, in State v. Sepulvado, 367 So.2d 762 (La.1979), *962 this court held that although within the statutory limit, a sentence might violate a defendant's constitutional right against excessive punishment. While a trial court is given wide discretion in the imposition of sentences within statutory limits and a sentence imposed will not be set aside as excessive in the absence of an abuse of that discretion, the court does not have unbridled discretion in the imposition of a sentence. State v. Sepulvado, supra.
The purpose of La.C.Cr.P. Art. 894.1 is to provide the trial court with guidelines so that it may individualize the sentence to fit the particular defendant, considering his background and the offense committed. It is obvious in the instant case that these guidelines were considered by the court in arriving at the conclusion that there was an undue risk that during the period of a suspended sentence or probation the defendant would commit another crime and that he was in need of correctional treatment which could be most effectively provided by commitment to an institution. The court further felt that a lesser sentence than that imposed would deprecate the seriousness of the defendant's crime.
Defense counsel finally argues that defendant's sentence is excessive compared to the sentence imposed by the same judge on defendant Staggs. There is nothing in the law that requires that a sentencing judge treat co-defendants equally. State v. Rogers, 405 So.2d 829 (La.1981). To the contrary, in State v. Sepulvado, supra, we noted:
In providing a wide range of criminal sanctions for violations of a statute, the legislature obviously intends that the judge shall exercise his sentencing discretion to impose sentences gradated according to the individualized circumstances of the offense and of the offender. (367 So.2d at 766.)
This does not mean that disparity in sentences of co-defendants with similar backgrounds, charged with similar participation in identical crimes may not be considered as a factor in determining whether a sentence is excessive and out of proportion to the severity of a crime. It is only a factor to be considered along with all other appropriate considerations when there is no reasonable basis in the record for the disparity. State v. Sims, 410 So.2d 1082 (La.1982). Although we do not have the entire record before us in State v. Ovis L. Staggs, Jr., the information made available to us for our review fully justifies the disparity in the sentences of these two co-defendants.
We conclude that the reasons set forth by the trial judge show not only that the sentencing guidelines were followed but that this was a studied rather than an arbitrary decision. We conclude that the trial court did not abuse its discretion in the imposition of defendant's sentence.
These assignments of error are without merit.

DECREE
For the foregoing reasons, the conviction and sentence of defendant are affirmed.
DENNIS, J., concurs with reasons.
SEXTON, J., concurs disagreeing with the treatment of Assignments # 2 and # 3.
DENNIS, Justice, concurring.
I concur but disagree with the treatment of assignments four and five, and with the unnecessary remarks regarding standing and State v. Singleton, 376 So.2d 143 (La. 1979).
NOTES
[*] Judges William Norris, III, and Fred C. Sexton, Jr., of the Court of Appeal. Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Jack C. Watson, and Harry T. Lemmon.
[1] After the defense objected on the first day of trial to the joinder of the two offenses, the defendant was tried only on the manufacturing charge.
[2] Defendant's first attorney withdrew January 21, 1981 by written motion.
[3] La.C.Cr.P. Art. 767 provides:

The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant.
[4] La.C.Cr.P. Art. 729.5 provides:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
[5] Quimby and Staggs were arrested at the same time but charged separately.
[6] Defendant's appellate counsel is his third retained counsel. His first counsel withdrew prior to trial and the second counsel withdrew after the trial but before sentencing.
[7] La.C.Cr.P. Art. 894.1 provides:

A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.