JOY COSSICH LOBRANO, Judge.
hThe defendant, John R. Sholar (“Sho-lar”), was convicted of first degree robbery[1] and sentenced to thirty years at hard labor without the benefit of parole, probation or suspension of sentence. He appeals, arguing his sentence is excessive. For the reasons that follow, we affirm.
The State filed a bill of information charging Sholar and Joshua L. McRey-nolds (“McReynolds”), with armed robbery [2] and Sholar’s sister, Tabitha N. Sholar (“Tabitha Sholar”), with simple robbery[3]. The three co-defendants pled not guilty and the trial court granted their motion to sever. Sholar was tried first. A jury found him guilty of first degree robbery and the trial court imposed the thirty-year sentence at hard labor without the benefit of parole, probation or suspension |aof sentence. Sholar filed a motion to reconsider the sentence, which the trial court denied, and then a *2 notice of appeal. Prior to the lodging of this appeal, McReynolds and Tabitha Sho-lar entered plea agreements. McRey-nolds pled guilty to armed robbery and was sentenced to twenty years at hard labor without benefit of parole, probation, or suspension of sentence. Tabitha Sho-lar pled guilty to simple robbery and was sentenced to seven years, suspended, and five years of active probation.
The facts of the case pertinent to this appeal are as follows. Tabitha Sholar drove Sholar and McReynolds to a home located at 2038 Jena Street in New Orleans. Sholar approached the home and knocked on the front door. The victim (“D.L.”)[4] and her fiancé resided at the home. When D.L. heard the knock, she put on a bath robe, went and peered out of the front door window, and saw Sholar. She vaguely recognized him but did not know his name. Sholar communicated to D.L. that he owed her fiancé money. When D.L. opened the door, a second, masked man (McReynolds), forced his way into the home, and Sholar followed.
Once inside, the masked man wielded a gun and pistol-whipped D.L. The two men then asked her about a safe in the house. They told D.L. to get on the ground, tied her up with a dog’s leash, and the masked man pistol-whipped her again. At one point, the men pulled D.L.’s robe above her head to partially obscure her vision. D.L. testified that the two men addressed her by her first name. |sThey pointed a gun at her head, threatened to kill her, and insisted that she tell them where the safe was located. D.L. replied that the safe was in the closet. The men located the safe, found a bolt cutter in the home’s toolbox, and cut the metal cable which secured the safe in the closet. D.L. told them she did not know the combination to the safe, and they again threatened to kill her. D.L. testified that Sholar held her down by sitting on top of her and beating her buttocks, while the masked man ransacked the home. Sholar removed her underwear, unzipped his pants, and touched her in a sexual manner. Once the men obtained the safe, they ordered D.L. to stay down on the ground, and then they left house together. After their departure, D.L. finagled her way out of the dog leash and dialed 911.
N.O.P.D. Detective Bryan Patrick Mul-vey (“Det. Mulvey”) went to the scene, interviewed D.L., and generated the initial incident report. He observed that the home had been ransacked with furniture and other objects in disorder. He also noticed blood on the floor. Det. Mulvey reported that D.L. had a lacerated forehead, a split lip, and a bloody face; he described her as being visibly upset, shaken, agitated, and afraid.
N.O.P.D. Detective Guy Swalm (“Det. Swalm”), the lead detective on the case, testified that he went to the crime scene shortly after the incident. At that time, D.L. provided a description of the unmasked man and also drew a sketch of him. Later, D.L. and her fiancé gave him the name of Tabitha a/k/a “Nikki” Sholar, because Tabitha Sholar was one of the few people who knew that D.L.’s fiancé would not be home the day of the crime. Det. Swalm found Tabitha Sholar |4on the social networking site Facebook.com. Through further internet searching, Det. Swalm discovered that Tabitha Sholar had a brother whose photo matched D.L.’s description of the unmasked robber. He ascertained that Sholar resided in the Waveland, Mis *3 sissippi area and obtained Sholar’s most recent booking photo from authorities there. Det. Swalm later presented a six person photographic line-up to D.L., who identified Sholar as the person who had robbed her. Thereafter, the three suspects were arrested.
A review of the record reveals no errors patent.
In the sole assignment of error, Sholar contends that the thirty-year sentence imposed by the trial court is unfairly excessive sentence for two reasons. First, Sho-lar emphasizes that McReynolds received a more lenient sentence even though he acted as the masked gunman, pistol-whipped the victim twice, and pled guilty to the more serious crime of armed robbery. Second, Sholar claims the State had offered him a plea bargain with a ten-year sentence that he rejected because it hinged on his testifying against his sister.
Excessive sentences are prohibited under the Eighth Amendment of the Unites States Constitution and La. Const. Art. I, § 20. A sentence may be constitutionally excessive even when the sentence falls within the range permitted by statute. See State v. Sepulvado, 367 So.2d 762, 767 (La.1979). For a sentence to be found excessive, it must be “so grossly disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice.” State v. Cann, 471 So.2d 701, 703 (La.1985). The trial court is granted broad sentencing discretion, and we will not overturn the district court’s judgment absent | san abuse of that discretion. See State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462.
To determine whether the trial court has abused its broad sentencing discretion, we first discern whether the court took into account the sentencing criteria listed in La.C.Cr.P. art. 894.1. See Sepulvado, 367 So.2d at 767-768. The trial court, while not required to expound on all factors listed in Article 894.1, is required to take into account both aggravating and mitigating factors. See State v. Square, 433 So.2d 104, 110 (La.1983). Our purpose is not to enforce mechanical compliance by a sentencing judge, but to ensure that there is a factual basis for the sentence imposed. See State v. Batiste, 06-0875, p. 18 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, 820. If we find the trial court properly articulated its reasons for the defendant’s sentence, we then determine whether the defendant’s sentence was tailored to both the severity of his crime and his personal situation. See State v. Spencer, 374 So.2d 1195 (La.1979).
The issue is whether McReynolds’s plea agreement and more lenient sentence merits reversal of the trial court’s judgment sentencing Sholar to thirty years. Sholar cites State v. Quimby, 419 So.2d 951 (La.1982) and points out that an incongruity in sentences between co-defendants charged with similar crimes arising out of the same factual scenario should be considered. However, the Supreme Court has said that incongruity is “only a factor to be considered along with all other appropriate considerations when there is no reasonable basis in the record for the disparity.” 419 So.2d at 962.
The Supreme Court in State v. Weary, 2003-3067 (La.4/24/06), 931 So.2d 297 explains:
IfiAs a general rule, the fact that a co-defendant has received a more lenient sentence does not necessarily indicate that the penalty imposed on the defendant is excessive. State v. Tate, 2001-1658 p. 26 (La.5/20/03), 851 So.2d 921, 940, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). “Disparities are inherent in a system where punishment is tailored to fit the defendant and the crime. The Equal Protection *4 Clause only dictates that all defendants be afforded the same sentencing considerations and does not compel any particular result.” State v. Day, 414 So.2d 349, 352 (La.1982).
2003-3067, p. 42 (La.4/24/06), 931 So.2d 297, 324.
In this case, the trial court sentenced Sholar to a term within the sentencing range of not less than three and not more than forty years. At the sentencing hearing, the trial court noted several aggravating factors which it considered in imposing the thirty year sentence: Sholar’s presence during the pistol-whipping; his decision to remain in the house after McReynolds’s violent actions; his molestation of D.L.; his violation of D.L. in the sanctity of her own home; and his lack of remorse and unwillingness to take responsibility for his actions. We find these factors support the sentence imposed by the trial court, and the fact that McReynolds received a more lenient sentence does not merit a reversal of Sholar’s sentence.
Furthermore, Louisiana jurisprudence supports the imposition of a thirty-year sentence for first degree robbery. In State v. Wallace, 522 So.2d 1184 (La.App. 4th Cir.1988), the defendant entered a French Quarter store with a gun, shouted that he was there for a stick-up, and shot the co-proprietor twice. The defendant was convicted of first degree robbery for which he was sentenced to forty years, and attempted second degree murder for which he was sentenced to thirty years, to run concurrently. In State v. Mitchell, 35,970 (La.App. 2 Cir.5/8/02), 818 So.2d 807, the defendant robbed a dollar store, grabbed the victims at gun point, held the cocked gun to their heads, and threatened to kill them. The defendant was convicted of first degree robbery and sentenced to thirty years. These cases, along with the trial court’s enunciated sentencing factors, substantiate the factual bases for the sentence imposed.
Moreover, McReynolds’s violent actions of wielding a firearm and battering D.L. have no bearing on Sholar’s harsher sentence. In State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1, the defendant and co-defendant robbed a jewelry store. Although the defendant pointed a gun at people inside the store and then drove the getaway car, during the chase that followed the co-defendant fired two shots at their pursuers from the car. The defendant challenged his sentence as excessive because his co-defendant received a lesser sentenced, despite shooting a gun. The defendant was convicted of armed robbery and sentenced to forty years. The co-defendant was convicted of armed robbery and two counts of second degree murder. He was sentenced to twenty years on each count; the three sentences were ordered to run consecutively.
When the co-defendant was sentenced, Louisiana felony sentencing guidelines were in effect and provided for a maximum of fifteen years, which the trial court exceeded by imposing a twenty-year sentence. Sentencing guidelines had been displaced in Louisiana when the trial court sentenced the defendant. The trial court emphasized that, despite the co-defendant’s more egregious actions, the defendant was a principal to the crime and “to that extent [the defendant] share[s] equally to the extent of this robbery.” 2001-2574, pp. 5-6, 839 So.2d at 4. The 1 sSupreme Court, reversing the appellate court,[5] concluded the trial court did not abuse its discretion in imposing the forty years sentence. Id. at 7, 839 So.2d at 4.
*5 At the sentencing hearing, the trial court pointed out that Sholar lured D.L. to the front door and convinced her to open it and, although unarmed, he remained at the house after McReynolds wielded his gun and pistol-whipped her. The trial court emphasized that Sholar sexually molested D.L. and humiliated her by sitting on her back and beating her buttocks like a set drums. Sholar attempts to shirk responsibility by claiming that McReynolds somehow forced him to act criminally. However, the record does not substantiate this claim. D.L. testified that she never observed McReynolds directing or coercing Sholar into tying her up, holding her down, or molesting her. In fact, she testified that both Sholar and McReynolds openly discussed whether or not to kill her. Clearly, Sholar’s own actions support the sentence imposed by the trial court.
Finally, Sholar disputes his sentence, claiming it is excessive in comparison to the minimum ten year sentence offered by the State had he pled guilty to armed robbery without a firearm enhancement. Sholar alleges that he rejected the plea because the agreement hinged upon his testifying against his sister. This argument lacks merit. There is an inherent risk in either accepting or rejecting a plea agreement. Sholar’s rejection of the plea agreement carried the inherent risk of receiving a harsher sentence upon conviction by a jury.
|nIn summary, we find the trial court did not abuse its discretion by sentencing Sho-lar to thirty years at hard labor without the benefits of parole, probation, or suspension of sentence.
Accordingly, Sholar’s conviction and sentence are affirmed.
AFFIRMED.

.La. R.S. 14:64.1 provides:
A. First degree robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
B. Whoever commits the crime of first degree robbery shall be imprisoned at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence.

. See La. R.S. 14:64.

. See La. R.S. 14:65.

. Due to the nature of the facts, we refer to the victim in this case by her initials. See La. R.S. 46:1844(W).

. The First Circuit Court of Appeal concluded that the evidence in the record did not justify the great disparity in the co-defendants’ sentences. State v. Smith, 00-2283 (La.App. 1 Cir. 6/22/01), 800 So.2d 446.