376 So.2d 143 (1979)
STATE of Louisiana
v.
James SINGLETON.
No. 64606.
Supreme Court of Louisiana.
October 8, 1979.
James B. Supple, Franklin, Chief Defender, 16th Judicial District Court Indigent Defender Board, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Walter J. Senette, Asst. Dist. Atty., for plaintiff-appellee.
BLANCHE, Justice.
Defendant was charged by bills of information with 6 counts of simple burglary, R.S. 14:62; 4 counts of theft, R.S. 14:67 and 1 count of aggravated battery, R.S. 14:34. Denial of his motion to suppress the evidence and the confession secured by the authorities following his arrest brought forth the defendant's guilty plea to four of the burglaries. The state dismissed all other charges. The trial court then sentenced defendant to serve three years at hard labor for each burglary offense and ran those *144 sentences concurrently, suspended them and placed the defendant on probation. The court conditioned probation on defendant serving six months in the parish jail. The court also ordered restitution to the victims. With his guilty plea, defendant specifically reserved his right to appeal the denial of the motion to suppress, State v. Crosby, 338 So.2d 584, La.1976, and now pursues six assignments of error filed below.
Evidence adduced at the hearing on the motion to suppress reveals that a serious controversy arose between defendant and a juvenile identified as Danny Grogan over a $100 bill. Defendant had accused Grogan of stealing the money and had beaten him up. The police were called and Officer Carl Parisola responded to the call. Officer Parisola, in an effort to resolve the controversy between the two combatants, first went to a restaurant where Grogan had purportedly cashed a $100 bill. There he learned that Grogan had indeed purchased some food and paid for it with a $100 bill and left without eating. Thereafter, both Grogan and defendant voluntarily accompanied Officer Parisola to the police station. After a Miranda warning was given to Grogan, he was questioned. It was then that Grogan explained that the defendant had given him money to keep him quiet about hitting Officer Bean in the back of the head with a road barricade used to regulate traffic at a local fair. After glancing at the police report on the Bean incident, the officer's interest in the juvenile quickened and it was not long before he was being questioned concerning certain burglaries in the area. It was then that Grogan implicated defendant in specific burglaries and claimed that the defendant had given him money to keep his mouth shut. He further described certain items stolen in the burglaries and revealed where defendant had hidden them in his house. Armed with this information, the officers obtained a search warrant and sure enough, the stolen goods were retrieved from defendant's mother's house. Upon their return to the police station, defendant was confronted with the stolen goods and he then confessed.
Assignments of error numbers 1, 2, 3 and 5 are interrelated assignments and pertain to the suppression of defendant's confession; assignment number 4 pertains to the suppression of evidence seized from defendant's mother's house. The defendant's argument is one of derivative taint. The first premise of the argument is that Grogan was juvenile and a suspect in a theft case and accordingly, was entitled to the advice of an attorney or an informed adult before he surrendered his Fifth Amendment rights. State in the Interest of Dino, 359 So.2d 586 (La.1978).
In Dino, this Court set out specific guidelines to be used by police officers in questioning juveniles. Specifically, before any statements given by juveniles can be used, it must be affirmatively shown by the state "the juvenile engaged in a meaningful consultation with an attorney or an informed parent, guardian, or other adult interested in his welfare before he waived his right to counsel and privilege against self-incrimination." Dino's meaning is that before any statements given by a juvenile can be used, it must be shown that the juvenile actually consulted with an attorney or an adult before waiver and that the adult or attorney consulted was interested in the welfare of the juvenile; or, that if an adult other than an attorney was consulted, the adult was fully advised of the rights of the juvenile.
Officer Parisola freely admitted that Grogan had not consulted with anyone prior to his station house interview and that he could have arrested the juvenile as an accessory after the fact since he had admitted taking money from defendant to keep his mouth shut about the burglaries. Thus, it is fairly obvious that none of the mandates established by the Dino rule were followed by Officer Parisola in taking Grogan's statement after he had implicated himself. Defendant now proceeds to the next step in his argument stating that the only fact establishing probable cause for the search warrant was that obtained from the juvenile Grogan after violation of his Dino rights. Accordingly, defendant argues that *145 the evidence, although secured pursuant to an otherwise valid search warrant, should be suppressed because the only showing of probable cause was that made on an affidavit which included statements taken from a juvenile in violation of his constitutional rights.
Undoubtedly, Grogan could have complained that his statement and the evidence secured as a result thereof should be suppressed as having been obtained in violation of his constitutional rights; however, the question is whether the defendant has standing to challenge the violation of Grogan's rights.
We believe that he does not have such standing.
The basis for warnings required by the Fifth Amendment is the privilege against self-incrimination and that privilege is not violated when the information elicited from an unwarned suspect is not used against him. People v. Varnum, 66 Cal.2d 808, 427 P.2d 772 (1967). For that reason, the noncoercive questioning of Grogan was not in itself unlawful, and could have legally been used as probable cause for the issuance of a search warrant. Accordingly, if the search warrant was lawfully obtained, the evidence secured thereby was not in violation of defendant's Fourth Amendment constitutional rights.
A fortiori, the evidence having been legally seized could not have tainted the defendant's confession.
In the last specification of error, defendant in essence contends that the officers plagued him until he finally gave up and made a confession despite his request for an attorney to assist him. Defendant's account was hotly contested by Officers Parisola and Osborne. Both officers denied the second interrogation and denied that defendant requested an attorney or invoked his Fifth Amendment privilege. The trial judge evidently chose to believe Parisola and Osborne and not the defendant. As set forth in State v. Adams, 347 So.2d 195, 199 (La.1977), the credibility charge is essentially unreviewable by this Court.
The record amply supports findings of the trial court in this regard and this specification of error therefore lacks merit.
For the above and foregoing reasons, the conviction and sentence of the defendant are affirmed.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
Article 1, § 5 of our state constitution, in part, states:
"* * * Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
Singleton was certainly adversely affected by Grogan's confession. The defendant argues that the confession was the product of an unreasonable seizure in that Grogan's confession was obtained by a custodial interrogation which violated his constitutional rights. It appears to me that this significant state constitutional question has merit.
The majority completely ignores the state constitutional issue, choosing to decide the case on the basis of a California case interpreting the federal constitution. It is difficult to understand how the majority can ignore the problem, particularly since we recently discussed the question at some length, see State v. Bouffanie, 364 So.2d 971 (La.1978), and the issue was called to our attention again by the briefs in this case. See also State v. Culotta, 343 So.2d 977, 982 (La.1977) ("If the sole basis of the affidavit was such illegally-secured [through unconstitutional arrest] evidence, our conclusion might well be [that the evidence should be suppressed].")