430 So.2d 1327 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Raymond Anthony WALKER, Defendant-Appellant.
No. CR 82-502.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1983.
*1328 David Kent Savoie, Drost & Savoie, Sulphur, for defendant-appellant.
Leonard K. Knapp, Jr., Dist. Atty., and Robert Bryant, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before GUIDRY, STOKER and KNOLL, JJ.
GUIDRY, Judge.
The defendant, Raymond Anthony Walker, pleaded guilty to the charge of accessory after the fact to simple burglary, conditioned upon appellate review of his complaint of an adverse pre-plea ruling on a motion to suppress. See State v. Crosby, 338 So.2d 584 (1976).
Defendant urges two assignments of error on appeal: (1) the trial judge erred in ruling that there was probable cause to arrest the defendant for criminal trespass; (2) the trial judge erred in ruling that a co-defendant's statement inculpating both himself and defendant were not constitutionally excludable.
The defendant, Walker, and his co-defendant, Paul Mark Arcenaux, were initially arrested on charges of criminal trespass. The incidents surrounding that arrest led to their subsequent arrest on charges of burglary and theft. The bill of information initially charged each defendant with simple burglary of a structure (LSA-R.S. 14:62) and theft of items in that structure having a value in excess of five hundred dollars (LSA-R.S. 14:67). However, the bill was amended as to Walker charging him only as being an accessory after the fact to simple burglary (LSA-R.S. 14:25).
A consolidated hearing was held on the motions of the defendants to suppress tangible items seized and oral inculpatory statements. Each defendant stipulated at the hearing on their motions that the tangible items of evidence were not in their possession or control at the time of the seizure. The motion to suppress based on constitutional violations as to those items was abandoned. Following the hearing, the trial judge denied the suppression motions and Walker's co-defendant, Arceneaux, sought and was granted a writ to the Louisiana Supreme Court, challenging the trial judge's failure to suppress Arceneaux's inculpatory statements. State v. Arceneaux, 416 So.2d 938 (La.1982). The Supreme Court rendered its decision on the Arceneaux writ reversing the denial of Arceneaux's suppression motion. State v. Arceneaux, 425 So.2d 740 (La.1983).
This decision is controlling as to most of the issues presented on this appeal. The remaining issue is whether Walker has standing to object to the admission of his co-defendant's statement which the Supreme Court declared inadmissible as against Arceneaux.

FACTS
Provided below is the factual background of this case as set forth by the Supreme *1329 Court in Arceneaux, supra, (the word "defendant", when used by the Supreme Court, refers to co-defendant, Arceneaux):
"The facts adduced at the suppression hearing[4] are generally not in dispute. At about 5:30 a.m. on February 8, 1982, Officer Miles of the Sulphur Police Department was on routine patrol. While driving east on Highway 90, he saw a parked vehicle on the north side of the railroad tracks with its headlights on. The vehicle was on a one-way dirt path[5] which ran parallel to the railroad tracks. Miles, aware of complaints of criminal damage to property, trespassers, and people throwing rocks at trains in the area, turned around and drove north onto the property of a concrete plant, which was located south of the railroad tracks. He pulled up behind a rock pile and shined his spotlight on the vehicle, whereupon the vehicle, which had two people in it, started to back up. Knowing that the only public access to the path was Prater Road, Miles radioed Officer Decker to head off the vehicle. Decker responded and proceeded along the `path' with his spotlight on. Decker testified that he saw `... the doors were open on the vehicle ... two subjects were getting into the vehicle, and the doors closed, and the vehicle started backing out towards me....' When the vehicles got within thirty feet of each other, Decker got out of his vehicle and ordered the driver (Arceneaux) to stop the car. At this time, Miles arrived on the scene and the officers began identification procedures on Arceneaux and the passenger (Raymond A. Walker).[6] When Decker noticed a train coming, all parties drove to a nearby parking lot at the Red Top Grocery. There, Lieutenant Moss and two units from the Calcasieu Parish Sheriff's Department arrived. Arceneaux was once again requested to produce identification. Although Arceneaux was not `formally' arrested at this time, Miles testified that he would have restrained him if he had tried to leave. Five or ten minutes later, Miles and Moss left the parking lot to search the area near the railroad tracks. Upon finding an electric guitar in a water-filled ditch or hole,[7] they radioed Decker to arrest Arceneaux. Decker formally arrested defendant for trespassing on Southern Pacific Railroad property,[8] advised him of his Miranda rights and transported him to the Sulphur Police Department where he was booked on the charge of trespass. At 6:50 a.m., defendant, after being advised of his Miranda rights by Officer Doucet, signed a waiver of rights form. At 7:02 a.m., Officer McCann of the Sulphur Police Department took over and again advised defendant of his rights. McCann asked Arceneaux: `[W]here did the items recovered come from?' Defendant replied that they `had come from the mini-warehouse.' McCann intended to ask more questions but at that point defendant stated that he wanted to `talk to an attorney first.' Defendant's request for an attorney is not disputed. Questioning then ceased. Subsequently, defendant was taken across the street to the Sulphur substation. Meanwhile, Officer Steach, a burglary and theft investigator with the Calcasieu *1330 Sheriff's Office, had been called to assist in the case by the Sulphur Police Department. Steach, after investigating the area near the railroad tracks, arrived at the sub-station at about 10:30 a.m. Thereafter, at about 11:30 a.m. (some four hours after Arceneaux had requested counsel), Steach, unaware of defendant's request for counsel, proceeded to interrogate him about the break-in after advising him of his Miranda rights and having him execute a waiver of rights form. Defendant orally confessed to his involvement in the crime. However, defendant refused to give a written statement stating that `he wanted to talk with an attorney.' Questioning then ceased and defendant was placed under arrest for burglary and theft."
Additionally, the oral statement given to Officer Steach by Arceneaux implicated Walker as being an accessory after the fact to simple burglary. He denied Walker's participation in the burglary, but did state that Walker helped him hastily unload the stolen items once they were aware that they had been spotted by the police. Defendant Walker's only statement was to Deputy Steach, and that was to the effect that he had been sleeping in the car when the incident occurred. He then requested an attorney.

ASSIGNMENT OF ERROR NO. 1
The Supreme Court in Arceneaux reversed the trial court finding and held that the officers did not have probable cause to believe that Arceneaux had committed any crime and that the arrest was therefore illegal. This finding is also controlling as to Walker. We therefore conclude that the trial court erred in its ruling that there was probable cause to arrest the defendant, Walker.

ASSIGNMENT OF ERROR NO. 2
The trial judge having found that the defendant's arrest was made with probable cause and therefore was a legal arrest, did not reach the issue of whether any statements made were tainted with the illegal arrest. As to the statement made to Officer Steach, he did consider the issue of whether Arceneaux's Fifth Amendment rights had been violated by custodial interrogation without a valid waiver. He found that the violation was not deliberate and concluded that the exclusionary rule did not apply.
The Supreme Court in Arceneaux treated the statement made by Arceneaux to Officer McCann separately from the statement made to Officer Steach. The court found the first statement made to Officer McCann to be constitutionally infirm under the Fourth Amendment relying on Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) and Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The court however, pretermitted the question of whether the second statement made to Officer Steach constituted a violation of Arceneaux's Fourth Amendment rights, deciding instead that the statement was inadmissible as a violation of Arceneaux's Fifth Amendment rights relying on Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In reversing the trial court's finding that a "good faith" exception to the exclusionary rule would be applicable in this case the court stated:
"Good faith is not relevant because once the defendant has expressed his desire to deal with the police only through counsel, all successive officers who deal with the defendant are held to have knowledge of this fact. State v. West, 408 So.2d 1114 (La.1981). Hence, the second statement (confession) made to Officer Steach is inadmissible."
These findings of the Supreme Court in Arceneaux are also controlling in this case.
Following Walker's appeal, the trial judge issued additional reasons for ruling on the motion to suppress which were made a part of the record. As to Walker's specification of error no. 2, the trial judge noted that Walker had no standing to object to the admission of his co-defendant's statements. This issue was not addressed in Arceneaux, supra. Additionally, the Supreme *1331 Court's decision in Arceneaux is based on jurisprudence interpreting Federal constitutional provisions. As the result may differ depending on the specific provision either under the Federal Constitution, the IV and V amendments or under our State Constitution Art. I, § 5 or Art. I, § 13, we must determine the specific violation(s) in order to resolve the issue of standing.

THE FIRST STATEMENT
The Supreme Court found that the first statement made to Officer McCann was tainted by the illegal arrest and therefore should be excluded. Although the court relied on Brown v. Illinois, supra, and Wong Sun v. United States, supra, which are based on violations of U.S. Constitution Amendments IV and XIV, their finding evidences as well a violation of Louisiana Constitution Art. I, § 5 (1974). "Any evidence produced as a result of an illegal search and seizure is tainted and thus inadmissible under the state and federal constitutions." State v. Thomas, 349 So.2d 270 at 273 (La. 1977), citing U.S. Constitution Amendment IV; Louisiana Constitution Art. I, § 5 (1974); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); State v. Fearn, 345 So.2d 468 (La.1977); State v. Ranker, 343 So.2d 189 (La.1977); State v. Kinnemann, 337 So.2d 441 (La. 1976).
The express intention of Article I, § 5 of our State Constitution is that any defendant against whom evidence is acquired as a result of an unreasonable search or seizure, whether or not it was obtained in violation of his rights, has standing to exclude the evidence. State v. Gibson, 391 So.2d 421 (La.1980); State v. Boyd, 359 So.2d 931 (La.1978); State v. Culotta, 343 So.2d 977 (La.1977). We therefore conclude that under Louisiana Constitution Art. I, § 5, Walker has standing to exclude the statement made by Arceneaux to Officer McCann because such statement is tainted with the illegal arrest.

THE SECOND STATEMENT
The Supreme Court, pretermitting the Fourth Amendment issue, found that the second statement made to Officer Steach was inadmissible against Arceneaux. The court relied on Miranda v. Arizona, supra, which declared the right of an accused under the Fifth and Fourteenth Amendments to have counsel present during custodial interrogation. This right is also guaranteed by Article I, § 13 of the 1974 Louisiana Constitution. In State v. Willie, 410 So.2d 1019 (La.1982), the court stated:
"Article 1 § 13 of the 1974 Louisiana Constitution requires that any person arrested or detained in connection with the investigation or commission of any offense must be advised fully of the reasons for his arrest or detention, his right to remain silent, his right against self-incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. By the adoption of this provision, Louisiana enhanced and incorporated the prophylactic rules of Miranda v. Arizona. In Re Dino, 359 So.2d 586 (La.1978)."
Although it is clear that the use of this statement at trial against Arceneaux would violate his rights under Article I, § 13 of the 1974 Louisiana Constitution, we conclude that Walker may not challenge the use of this statement against him on that basis. In State v. Singleton, 376 So.2d 143 (La.1979), the Supreme Court addressed the question of whether a defendant has standing to challenge the violation of another's Fifth Amendment constitutional rights and stated as follows:
"Undoubtedly, Grogan [the juvenile] could have complained that his statement and the evidence secured as a result thereof should be suppressed as having been obtained in violation of his constitutional rights; however, the question is whether the defendant has standing to challenge the violation of Grogan's rights.
We believe that he does not have such standing.
The basis for warnings required by the Fifth Amendment is the privilege against self-incrimination and that privilege is not violated when the information elicited *1332 from an unwarned suspect is not used against him. People v. Varnum, 66 Cal.2d 808, [59 Cal.Rptr. 108] 427 P.2d 772 (1967)."
We must now decide the question pretermitted by the Supreme Court in Arceneaux, i.e., whether the second statement was so attenuated as to dissipate the taint of the illegal arrest. In deciding this issue as to the first statement in Arceneaux, the court stated:
".... In Brown, the United States Supreme Court identified several factors that should be considered in determining whether a confession has been purged of the taint of the illegal arrest: `the temporal proximity of the arrest and the confession, the presence of intervening circumstances,... and, particularly, the purpose and flagrancy of the official misconduct.' Brown, supra, at 603-604 [95 S.Ct. at 2261-62]. The state bears the burden of proving that a confession is admissible. Ibid."

In concluding that the state failed to sustain its burden, the court applied these factors to the first statement as follows:
"Defendant's statement to Officer McCann that the items recovered had come from the mini-warehouse was made less than two hours after he had been arrested. There were no intervening events of any significance. Moreover, defendant was arrested without probable cause in the hope that something might turn up." Taylor v. Alabama, ___ U.S. ___, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Brown v. Illinois, supra.
The second statement was given approximately four hours after the first statement and less than six hours after the arrest. The only intervening event of any significance was the request by Arceneaux for counsel. We conclude that the intervening four hours was not a sufficient break in the causal connection between the illegal arrest and the statement so that the act was "sufficiently an act of free will to purge the primary taint." As aforestated, under Louisiana Art. I, § 5, Walker has standing to exclude a statement tainted with the illegal arrest. We, thus, conclude that Arceneaux's second statement to Officer Steach is inadmissible and the trial judge's conclusion to the contrary was error.
For the foregoing reasons, the trial judge's ruling on the motion to suppress is reversed. Defendant's guilty plea is vacated and the case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[4] It was stipulated that if Deputy Steach were called as a witness to testify, his testimony would be substantially the same as that previously given at the preliminary examination with reservation of the right to each party to call the witness for additional questions. Ultimately, he was called to testify at the hearing.
[5] The path, located in the City of Sulphur, Calcasieu Parish, was part of a railroad right-ofway owned by Southern Pacific Railroad.
[6] The motion to suppress concerns only Arceneaux.
[7] Officers Miles and Moss also found another guitar, a portable television, stereo equipment and automobile equipment in the ditch.
[8] It is not clear whether defendant was arrested under Section 10-43 (criminal trespass) of the Code of Ordinances of the City of Sulphur or La.R.S. 14:63 (criminal trespass). This charge was later rejected by the district attorney's office.