490 So.2d 594 (1986)
STATE of Louisiana, Appellee,
v.
Thomas L. HAWKINS, Appellant.
No. 17734-KA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 1986.
*595 Tucker, Jeter & Jackson by James C. McMichael, Jr., Shreveport, for appellant.
William J. Guste, Jr., Barbara Rutledge, Baton Rouge, Paul J. Carmouche, Jr., Catherine M. Estopinal, Shreveport, for appellee.
Before MARVIN, JASPER E. JONES and LINDSAY, JJ.
LINDSAY, Judge.
Defendant, Thomas L. Hawkins, was charged by bill of information with possession of marijuana with intent to distribute in violation of LSA-R.S. 40:966(A)(1). The defendant filed a motion to suppress physical evidence, to wit, the marijuana seized from his residence. After an evidentiary hearing, the court denied the defendant's motion. The defendant subsequently withdrew his former plea of not guilty and entered a plea of guilty to this offense, reserving his right to appeal the denial of his motion to suppress. See State v. Crosby, 338 So.2d 584 (La.1976). The defendant was then sentenced by the trial court to serve two years at hard labor.
Defendant urges two assignments of error on appeal. We find that the defendant's arguments are meritless and affirm his conviction and sentence.

FACTS
On April 20, 1984, Shreveport Police Narcotics agents executed a search warrant at the residence of the defendant and his wife. Although the defendant and his wife were not present, the agents were allowed entry into the apartment by an assistant manager. A search was conducted, whereupon approximately 12.96 pounds of marijuana, packaged in large plastic bags, were seized.[1]
A copy of the search warrant and a note asking that the defendant and his wife contact the Shreveport Police Narcotics Division concerning this investigation were left at the apartment after the search was completed.
Subsequently on April 24, 1984, the defendant and his wife turned themselves in to Caddo Parish Sheriffs' Deputies. They were both charged with possession of marijuana with intent to distribute. As a part of the defendant's guilty plea, the charges against the defendant's wife were nolle prossed with the intent that the charges would be reinstituted should the defendant prevail in this appeal.
In his motion to suppress the marijuana seized from his apartment, the defendant contended that the sole basis for the affidavit supporting the issuance of the search warrant was evidence illegally obtained from a third person. Statements and information acquired from the arrest and execution of a search warrant at the home of Audry Dale Shelton in the early morning hours of April 20, 1984, were set forth in great detail by Agent Mark Holly in his affidavit in support of the search warrant for the Hawkins residence. The defendant contended that this affidavit lacked sufficient probable cause to support the issuance of the search warrant because the information was illegally acquired from Shelton. The defendant argued that following Shelton's arrest and a search of his home, Shelton was coerced and induced to *596 cooperate with the Shreveport Police Narcotics Agents, thereby making statements implicating the defendant, in exchange for the agents' agreements not to arrest and prosecute Shelton's wife and put his children in the care of the state.
At the hearing on the motion to suppress, it was revealed that Shreveport Narcotics agents Holley and Miller, armed with a valid search warrant, arrived at the Shelton residence to execute this warrant between 1:20 and 2:00 a.m. on April 20, 1984. After seating Shelton and his wife at the kitchen table, both were advised of their Miranda rights.
Shelton testified at the hearing, that when the agents first began to question him, he refused to answer and requested counsel. He stated the agents did not stop questioning him at that point, but instead indicated to him that his wife could be arrested and his children could be sent away to be cared for by the state if he did not cooperate. Shelton testified that he understood "cooperation" to mean that he was being asked to disclose the supplier of the marijuana found in his house. After his initial refusal to answer questions, and at the urging of his wife, Shelton agreed to waive his rights. He then made a recorded statement implicating Hawkins as his supplier and he also made a tape recorded telephone call to Hawkins to set up a deal to purchase more marijuana. Shelton testified that his statements were voluntary, but were made only after he was told what would happen to his wife and children if he didn't cooperate.
Agents Miller and Holley testified that the defendant was not under the influence of any fear, duress, or intimidation at any time during the interview. They also indicated that no menaces, threats, inducements, or promises, were made to get him to make these statements or the telephone call. The agents stated that Shelton was questioned concerning his wife's involvement with the marijuana, after she indicated to the agents that she was not involved in any manner and that she was urging her husband to cooperate as well.
Hawkins contends that Shelton was improperly coerced into making the recorded statements and telephone call by the undue influence and duress placed upon him by the narcotics agents. Hawkins argues that as a condition placed upon Shelton's cooperation, the agents indicated that they would not arrest Shelton's wife, although they had probable cause to do so. Thus, the defendant maintains that Shelton's statements were unconstitutionally obtained, and are not properly supportive of the probable cause necessary for the issuance of a valid search warrant for his apartment. He cites State v. Culotta, 343 So.2d 977 (La.1976), in support of his position. Thus, he argues that the marijuana seized from his apartment should have been suppressed.
We disagree with the defendant's analysis of this issue, however, and find that the trial court properly denied the defendant's motion.
Although not briefed or assigned as error to this court, the issue arose in oral arguments concerning a possible violation of Shelton's rights under Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). However, the question of whether Shelton invoked his right to counsel during questioning and whether this request was honored by the narcotics agents, cannot be raised by the defendant to support the suppression of evidence against him, as he does not have standing to assert such constitutional violations of Shelton's rights.
In State v. Walker, 430 So.2d 1327 (La. App. 3d Cir.1983), the Third Circuit Court of Appeal discussed this issue of standing and noted that the statement of a third party, Arceneaux, was inadmissible against Arceneaux, as it was obtained in violation of his rights under the Fifth and Fourteenth Amendments to have counsel present during a custodial interrogation. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Edwards v. Arizona, supra. The Third Circuit Court of Appeal noted that this right was also guaranteed by Article 1 § 13 of the *597 1974 Louisiana Constitution. With respect to the defendant, Walker, the court, however, stated:
Although it is clear that the use of this statement at trial against Arceneaux would violate his rights under Article 1, § 13 of the 1974 Louisiana Constitution, we conclude that Walker may not challenge the use of this statement against him on that basis.
The court of appeal also relied on the following language of the Louisiana Supreme Court in State v. Singleton, 376 So.2d 143 (La.1979) in which the question of whether the defendant had standing to challenge the violation of another's Fifth Amendment Constitutional rights was addressed.
Undoubtedly, Grogan could have complained that his statement and the evidence secured as a result thereof should be suppressed as having been obtained in violation of his constitutional rights; however, the question is whether the defendant has standing to challenge the violation of Grogan's rights.
We believe that he does not have such standing.
The basis for warnings required by the Fifth Amendment is the privilege against self-incrimination and that privilege is not violated when the information elicited from an unwarned suspect is not used against him. People v. Varnum, 66 Cal.2d 808, 59 Cal.Rptr. 108, 427 P.2d 772 (1967).
In Singleton, the defendant argued that the only facts establishing probable cause for the issuance of a search warrant of his home were those obtained from Grogan, a juvenile, whose statement was taken in violation of his Fifth Amendment rights as ennunciated by the Louisiana Supreme Court in State in Interest of Dino, 359 So.2d 586 (La.1978), U.S. cert. denied in 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), which set up guidelines to be used by police officers in questioning juveniles. In Singleton, the Supreme Court noted that none of the mandates established by the Dino rule (that the juvenile engaged in a "meaningful consultation" with an attorney or informed adult interested in his welfare before waiving his right to counsel and privilege against self-incrimination) were followed by the police officers in taking Grogan's statement. The defendant thus argued that the evidence, although secured pursuant to an otherwise valid search warrant, should be suppressed because the only showing of probable cause was that made in an affidavit which included statements taken from a juvenile in violation of his constitutional rights.
However, as noted above, the Louisiana Supreme Court found that the defendant did not have standing to challenge the violation of a third party's Fifth Amendment Constitutional rights.
This issue was also discussed by Professor P. Raymond Lamonica in a law review article where it was noted that the Supreme Court in Singleton refused to extend the Fifth Amendment/Article 1 § 13 exclusionary sanction of State in Interest of Dino to the broad standing rights of Article 1 § 5 of the 1974 Louisiana Constitution. Article 1 § 5 provides in part that "Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
The author stated further:
The opinion appears to indicate the broader exclusionary sanction is unavailable in search cases if the defect is not based directly upon article I, section 5. Article I, section 13 rights, insofar as expanded standing is concerned, apparently will be treated in the traditional, more limited manner.
Lamonica, Pretrial Criminal Procedure, 41 La.L.Rev. 643, 651 (1981).
This notion of limited standing is also relevant with respect to the defendant's assigned error concerning the alleged involuntary nature of Shelton's statements and whether in his motion to suppress, the defendant may properly contest such a violation of Shelton's rights.
*598 In State v. Burdgess, 434 So.2d 1062 (La.1983), the Louisiana Supreme Court stated that the defendant, in a motion to suppress his confession, had no standing to assert the involuntary nature of a third party's statement to the police. The defendant in that case contended that his statement was "fruit of the poison tree" and was therefore not admissible. However, the Supreme Court revealed:
A person adversely affected by a confession unlawfully obtained from another has no standing to raise its illegality in court. This principle has been applied where, as in this case, one codefendant or co-conspirator seeks to suppress evidence incriminating him that was obtained from a coparticipant in crime without proper compliance with the procedural requirements of Miranda or otherwise in violation of that party's Fifth or Sixth Amendment rights.... The failure of the 1974 Louisiana constitution to provide for such standing, while explicitly granting any person adversely affected by a search or seizure conducted in violation of the constitution standing to raise its illegality in the appropriate court, indicates that the framers did not consider that the additional benefit of extending the exclusionary rule to persons adversely affected by others' involuntary confessions would justify further encroachment upon the public interest in having criminal cases decided on the basis of relevant evidence. Compare La. Const. art. 1 § 5 with art. 1 § 16.
While we find that the defendant has no standing in this case to object to the nonvoluntary nature of his co-defendant's confession, we reserve judgment on the question of whether gross police misconduct against third parties in the overly zealous pursuit of criminal convictions might lead to limited standing. See United States v. Fredericks, supra, 586 F.2d [470] at 481 and the cases cited at note 14. In this case, however, the conduct of the police in the taking of Nall's statement is far from the sort of third-degree physical or psychological coercion that might prompt us to exclude the defendant's confession.
Therefore, we find that the defendant in the instant case also does not have standing to assert the alleged involuntary nature of Shelton's statements in support of his argument that the search warrant for his home was invalid. His contention that the supporting affidavit was totally lacking in probable cause, as it was based solely upon Shelton's alleged involuntary statements, is therefore meritless. We conclude that the trial court was correct in denying the defendant's motion to suppress, as we note that the questioning of the police officers in this case did not rise to a level of "gross police misconduct." The trial judge concluded that the narcotics agents decided not to arrest Shelton's wife primarily because of the protestations of Shelton and his wife that she had nothing to do with the marijuana. The trial judge stated that he believed that Mr. Shelton was motivated primarily to convince the officers that his wife was not involved rather than it being an issue of whether he was induced to cooperate with these agents.
We note further that in State v. Culotta, supra, the Louisiana Supreme Court held that evidence secured in a search pursuant to an otherwise valid search warrant did not have to be suppressed because a crucial part of the showing of probable cause contained in the affidavit included evidence which was the product of an illegal arrest and search of third persons which was inadmissible against the defendant at trial. The court noted that Article 1 § 5 of the 1974 Louisiana Constitution specifically provides that any person adversely affected by a search or seizure conducted in violation of that section shall have standing to raise its illegality in the appropriate court. The court noted parenthetically that if the sole basis of the affidavit was such illegally secured evidence, their conclusion might be different. However, the reliance upon this language by the defendant in the instant case is misplaced. (As is the defendant's reliance upon State v. Joseph, 351 So.2d 1162 (La.1977)). The illegalities *599 with which the defendant is concerned in the instant case do not fall under the grant of expanded standing as enunciated by Article 1 § 5 of the 1974 Louisiana Constitution, which in Culotta concerned evidence obtained as the result of the illegal arrest of third parties and subsequent unconstitutional searches and seizures.
Therefore, we find that the defendant's conviction must be affirmed, in that the issue of whether Shelton's statements were obtained in violation of his constitutional rights is not a matter properly raised by this defendant in support of his motion to suppress.
In his next assignment of error, the defendant asserts that the sentence imposed upon him was excessive in that the trial court: a) invalidly assumed that defendant was involved in other criminal activity not charged in the offense and that he had engaged in criminal activity in the presence of his children; and b) misapplied the provisions of LSA-C.Cr.P. Art. 894.1 and failed to properly consider the mitigating circumstances set forth in section B of that article. These contentions are without merit; the sentence imposed upon defendant was not excessive.
As a general rule, the trial judge is afforded wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Kelly, 469 So.2d 316 (La.App. 2d Cir.1985). There is no manifest abuse of the trial judge's discretion unless the penalty imposed is so grossly disproportionate to the severity of the crime committed, in light of the harm caused to society, so as to shock the reviewing court's sense of justice. State v. Nealy, 450 So.2d 634 (La.1984). The trial court's discretion is not unbridled, however. Even the imposition of a sentence within the statutory limits may in some cases violate the defendant's right against excessive punishment guaranteed by Article 1 § 20 of the 1974 Louisiana Constitution. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Kelly, supra.
The sentencing guidelines of LSA-C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. These guidelines require that the trial judge individualize the sentence to the defendant and the offense. State v. Kelly, supra. While the trial judge need not articulate every aggravating and mitigating circumstance outlined in LSA-C.Cr.P. Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ denied 439 So.2d 1074 (La.1983); State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir. 1983) writ denied 438 So.2d 1112 (La.1983).
A trial court is not required to render a suspension of sentence or probation on a first felony offense. The judge may consider whatever factors and evidence he deems important to a determination of the best interest of the public and the defendant. State v. McKethan, 459 So.2d 72 (La.App. 2d Cir.1984); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied, 435 So.2d 438 (La.1983). The trial judge stated orally his reasons for sentence in which he listed his findings in compliance with the provisions of LSA-C.Cr.P. Art. 894.1. He acknowledged that defendant was a first felony offender. However, the pre-sentence investigation indicated that Hawkins had admittedly been involved in other activities of packaging and distribution of quantities of marijuana. The trial judge felt that the activities of Hawkins and his wife were done in the presence and in direct contact with his children. Involved in the seizure was a large amount of marijuana, and it appeared that the defendant was engaged in the distribution of marijuana for economic purposes.
In considering the factors in LSA-C. Cr.P. Art. 894.1, the trial judge stated that although he considered defendant's remorse *600 for his past conduct, he did not find a suspended sentence appropriate in this case, primarily because of the amount of marijuana involved, the nature of the facts involved in this case and the defendant's past conduct in dealing with marijuana. The other evidence that the trial judge considered reflected that the defendant was involved in more than one instance with this type of activity, that he was also directly involved in the weighing, obtaining, and preparation of marijuana for sale, and that he may continue to commit other offenses. The trial judge stated that under these circumstances, he did not feel that a probated sentence was appropriate; moreover, he felt that a lesser sentence than that which he imposed would deprecate the seriousness of the offense.
The trial judge felt that the defendant was in need of correctional treatment and that a custodial environment would best serve that purpose. The trial judge took into account Hawkins' age, his employment, and his family. In particularizing the sentence to the defendant, the trial judge felt that he should not be exposed to an extensive period of confinement because the defendant did not appear to be beyond rehabilitation. After carefully weighing these considerations, as well as the aggravating circumstances, the trial judge imposed the sentence of two years at hard labor. Although the trial judge did not specifically articulate all of the mitigating circumstances in LSA-C.Cr.P. Art. 894.1, it appears that he did take them into consideration along with other mitigating factors. Thus, we conclude that the trial judge properly complied with the provisions of LSA-C.Cr.P. Art. 894.1.
The defendant also argues that the trial judge invalidly assumed that he was involved in other, uncharged, criminal activity and that he engaged in criminal activity in the presence of his children.
The record reflects that the defendant did in fact have a large quantity of marijuana which indicated to the trial judge that he was engaged in continuing sales. There is also evidence in the record which indicates that the defendant was involved in an on-going business related to selling marijuana. Therefore, it cannot be said that the trial judge manifestly abused his discretion in considering that the defendant was involved in other criminal activity. The trial judge specifically stated that the defendant himself admitted that he had engaged in other distributions of marijuana. This is obviously a valid consideration in determining whether the defendant should be exposed to a prison sentence. The fact that the marijuana was found throughout Hawkins' residence and that it was in plain view indicates that Hawkins did not hide his activities from his children. Defendant's openness in conducting his drug related activities increased the seriousness of his offense. Therefore, the trial judge did not manifestly abuse his discretion in concluding that any lesser sentence than a prison term would deprecate the seriousness of the defendant's crime.
Defendant's potential exposure to a violation of LSA-R.S. 40:966(A) is ten years at hard labor in addition to a $15,000.00 fine. He received a two year prison sentence which is on the lower end of the possible penalty scale. The record reflects that the trial judge considered the factors outlined in LSA-C.Cr.P. Art. 894.1 and that he took great pains in particularizing the sentence to this defendant. The trial judge balanced the aggravating factors against the mitigating factors to reach a fair and necessary sentence.
Accordingly, for the foregoing reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] Also subsequently seized from the defendant's apartment by narcotics agents Holley, MacCauley and Miller, were a set of triple beam scales, two more bags of marijuana and a small blue tray containing loose marijuana and rolling papers.