685 So.2d 1169 (1996)
STATE of Louisiana, Appellee,
v.
Abraham WESLEY, Appellant.
No. 28941-KA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 1996.
*1171 Carey J. Ellis, III, Rayville, for Appellant.
Richard Ieyoub, Attorney General, William R. Coenen, District Attorney, Penny Wise-Douciere, Assistant District Attorney, for Appellee.
Before BROWN, CARAWAY and PEATROSS, JJ.
BROWN, Judge.
Defendant, Abraham Wesley, was found guilty of being a convicted felon in possession of a firearm, La. R.S. 14:95.1, and was sentenced to ten years at hard labor without benefit of parole, probation or suspension of sentence. He has appealed. We affirm.

Facts
At the time of the present offense, defendant was on parole for a 1991 cocaine distribution conviction. His parole officer was LeeAnn Thomason. On September 20, 1994, Officer Thomason, working with Danny Fuller, another parole officer, was conducting routine field checks on parolees in the Rayville area. As the officers drove past the residence at 442 Center Street, they saw three parolees in the front yard and defendant standing on the steps. Seeing the officers, defendant went inside and locked the doors. The officers stopped and searched the other parolees in the front yard. Officer Fuller found a crack pipe and a rock of cocaine in parolee William Scott's pocket. Scott told the officers that he had purchased the rock inside the house from defendant, who kept cocaine in a brown pill bottle.
The officers requested backup from the Richland Parish Sheriff's Office and Deputy Terry Watson, who was in the area, responded immediately. The officers approached the house and knocked on the door. Defendant, after three to five minutes, opened the door, rubbed his eyes and stated that he had been taking a nap. The officers searched the house and found an empty brown pill bottle. The bottle was wet and the cap was off. Deputy Perry Fleming of the Richland Parish Sheriff's Office performed a field test on the residue in the bottle; the test was positive for cocaine. The crime lab later confirmed that the residue was in fact cocaine.
During the search, defendant sat on the couch. When Officer Thomason had defendant stand up, she discovered a loaded .25 caliber pistol under the cushion of the couch where defendant had been sitting. Defendant stated that the pistol belonged to his girlfriend, Segonia, who lived in the house. An 18-inch machete was also found under the couch. Defendant stated that the machete was his and that he used it for yard work.
Defendant was arrested and charged with possession of a firearm by a convicted felon. A jury convicted defendant as charged by an 11-1 vote. After reviewing a pre-sentence *1172 investigation report, the trial court sentenced defendant to 10 years at hard labor without benefit of parole, probation or suspension of sentence.

Discussion

Sufficiency of the evidence
In an assignment of error, defendant asserts that there was insufficient evidence to support the jury's verdict. According to defendant, there was no evidence linking ownership of the pistol to him, nor was there proof of his knowledge, dominion or control of the weapon.
The United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), found that due process protects a defendant from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime. Jackson further imposed a review obligation on appellate courts to inquire whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
In this case, defendant did not move for a post-verdict judgment of acquittal in the trial court before sentence pursuant to La.C.Cr.P. art. 821. This court, however, has the obligation, and not merely the option, to review the constitutional sufficiency of the evidence to convict in each case in which a criminal appeal is taken as authorized by the Louisiana Constitution, "regardless of how the error is brought to the attention of the court." State v. Otis, 586 So.2d 595, 604 (La.App. 2d Cir.1991). An assignment of error "designated" by the defendant "shall be reviewed on appeal," whether or not that is the sole assignment or whether the assignment in the appellate court complains of the ruling of the trial court on a postverdict motion for acquittal or on a motion for new trial. La.C.Cr.P. art. 920.
The Jackson v. Virginia standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the evidence by viewing that evidence in the light most favorable to the prosecution. In determining sufficiency, an appellate court must review all the evidence presented at trial, even that which might have been erroneously admitted. When the evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
This court's responsibility when reviewing sufficiency of evidence does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). The critical inquiry is not what a reviewing judge may believe, but instead, whether a rational juror could have found that the evidence proved guilt beyond a reasonable doubt. Jackson, supra. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
In order to convict defendant of the charged offense, the state had to prove beyond a reasonable doubt defendant's possession of a firearm, a prior conviction of an enumerated felony within a ten-year statutory period of limitation and general intent to commit the offense. La. R.S. 14:95.1.
Constructive possession, as opposed to actual possession, is sufficient to satisfy the possession element. State v. Day, 410 So.2d 741 (La.1982); State v. Washington, 605 So.2d 720 (La.App. 2d Cir.1992), writ denied, 610 So.2d 817 (La.1993). Constructive possession occurs when a firearm is subject to defendant's dominion and control. State v. Washington, supra. Defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary in nature and even if the control is *1173 shared. State v. Washington, supra, and cases cited therein.
The state proved by direct evidence that defendant had been convicted of a predicate felony, distribution of cocaine on October 22, 1991. Obviously, this conviction was within the requisite ten-year statutory period.
The state proved that defendant owned the home at 442 Center Street. Although he asserts that he did not live in the house, defendant listed this address on one of his monthly supervision reports and told his parole officer that he was the owner of the house. Further, a certified copy of a cash deed reflected defendant's purchase of the residence. All of the officers who testified stated that they had seen defendant at the residence on prior occasions. In addition, Deputy Watson testified that he saw men's clothing during the search of the house.
When the parole officers drove up to the residence at 442 Center Street, they saw defendant standing on the porch. Defendant immediately went inside and locked the doors. When he finally opened the door for the officers, he stated that he had been taking a nap. Defendant was the only one inside the home at the time of the search. Considering this evidence, the jury could have reasonably concluded that defendant either lived in or had some dominion and control over the home. The ultimate issue in this case, however, was not defendant's ownership or control over the house, but whether he was in possession of the pistol. Ownership or control of the house was merely one factor to aid the jury in its determination of this critical question.
The pistol was found under a cushion of the couch where defendant had been sitting. Upon the officers' discovery of the pistol, defendant immediately advised them that the gun belonged to his girlfriend who he stated lived in the house. In light of all of the evidence, the credibility of the statement denying possession of the weapon was questionable. Even if he did not own the gun, defendant is guilty of possession of a firearm if he had dominion and control over the gun, even if the control was only temporary in nature and even if the control was shared. State v. Washington, supra.
Under the totality of the evidence, the jury could have reasonably concluded that defendant had possession of the pistol. This assignment of error is without merit.

Motion to suppress
Prior to trial, defendant filed a pro se motion to suppress, asserting that the evidence seized was unlawfully obtained. The trial court denied the motion.
On appeal, defendant argues that the parole officers did not have a reasonable suspicion to search Scott, nor did they have the authority because Scott was not under their supervision. He argues that Scott's statement was a fruit of the unlawful search; because the search of defendant's property flowed from Scott's statement, that search was also illegal.
Initially, we must address whether defendant has standing or the right to object to the search of Scott. Standing is an adjunct of the exclusionary rule and serves as a limitation upon the operation of that rule. It comes into play as a means of determining who has been aggrieved by the search and is therefore in a position to suppress its fruits. Generally, it precludes a person, like defendant, from vicariously asserting the constitutional claims of another person, like Scott. See State v. Hawkins, 490 So.2d 594 (La. App. 2d Cir.1986), writ denied 494 So.2d 1174 (La.1986).
In this case, Scott's statement to the parole officers that he bought the cocaine from defendant inside the house caused the officers to search the residence. La. Const. art. 1, § 5 grants standing to any person adversely affected by a search and seizure conducted in violation of this section. In State v. Burdgess, 434 So.2d 1062 (La.1983), the Supreme Court, interpreting this constitutional provision, stated:
A person adversely affected by a confession unlawfully obtained from another has no standing to raise its illegality in court... The failure of the 1974 Louisiana constitution to provide such standing, while explicitly granting any person adversely affected by a search or seizure conducted *1174 in violation of the constitution standing to raise its illegality in the appropriate court, indicates that the framers did not consider that the additional benefit of extending the exclusionary rule to persons adversely affected by others' involuntary confessions would justify further encroachment upon the public interest in having criminal cases decided on the basis of relevant evidence. Compare La. Const. art. 1 § 5 with art. 1 § 16. (Emphasis added).
In State v. Foley, 570 So.2d 171 (La.App. 5th Cir.1990), the court concluded that defendant had no standing to contest the illegality of the stop, search and seizure of drugs from two men seen leaving defendant's apartment and that their statements that the drugs they possessed were obtained from defendant presented probable cause to arrest defendant and search his person and vehicle.
In the instant case, because defendant has no standing to assert a purported violation of Scott's constitutional rights, the statement made by Scott was appropriately used to justify the search of the residence. See State v. Hawkins, supra. As already noted, this residence was listed by defendant as his home on a monthly supervision report to his parole officer.
Our decision, however does not have to rest solely on the threshold question of standing. The search of Scott and his statement were lawful. A parolee has a reduced expectation of privacy which allows intrusions of his person and residence by his parole officer. State v. Vailes, 564 So.2d 778 (La.App. 2d Cir.1990) (citations omitted). The reduced expectation of privacy is a result of the parolee's agreement to report to a parole officer and to allow that officer to investigate his activities in order to confirm compliance with the provisions of his parole. State v. Vailes, supra.
A parole officer's powers, however, are not without some restraints. A parole officer may not use his authority as a subterfuge to help another police agency which desires to conduct a search but lacks the necessary probable cause. The parole officer must believe that the search is necessary in the performance of his duties and reasonable in light of the total circumstances. In determining the reasonableness of a warrantless search of a parolee and his residence, the court must consider: (1) the scope of the particular intrusion; (2) the manner in which the search was conducted; (3) the justification for initiating the search; and (4) the place it was conducted. State v. Vailes, supra (citations omitted).
In State v. Vailes, the probation officer had received information from a narcotic officer and a confidential informant that the defendant was possibly selling drugs out of and keeping weapons in his home. A search of the home revealed a shotgun in plain view in a bedroom and a rifle and other spare weapon parts on a table in a garage. The court concluded that this warrantless search was a reasonable exercise of the probation officer's authority. See also State v. Shields, 614 So.2d 1279 (La.App. 2d Cir.1993), writ denied, 620 So.2d 874 (La.1993).
In the present case, the parole officers had no prior information; they were merely conducting random checks on various parolees in the area. A parolee agrees to submit to unannounced visits from his parole officer as a condition of parole. It is an appropriate function of the parole officer to conduct such unannounced checks.
The initial search of parolee Scott was reasonable. Officer Thomason did not testify as to the basis of the initial approach of the parolees outside defendant's home. She did state that the men were known convicted felons and that their association or gathering together was a violation of their parole. When the officers found Scott congregating with known felons, the search of his person was reasonable. After the cocaine was found, Scott was advised of his Miranda rights, which he waived. He then explained that he bought the drug from defendant. Scott's statement was lawfully obtained.[1]
*1175 The search of Scott produced a rock of cocaine, which Scott admitted to buying from defendant. This information supplied the parole officers with reasonable suspicion to search defendant's home. Because the search of Scott was reasonable, the officers had the right and duty to investigate a possible probation violation and criminal activity by defendant.
Even without Scott's statement, the parole officers were justified in searching defendant's residence. Earlier, defendant had been warned by Officer Thomason about being seen at this residence with known felons and drug users. Defendant promised Officer Thomason that he would clean up his act; however, when the officers drove by the residence, defendant was doing exactly what he had been warned against by his parole officer. These circumstances standing alone were sufficient to justify the parole officers' intrusion into the residence.
The scope of the search and the manner in which it was conducted were also reasonable. The officers knocked on the door and announced their presence; there was no forced entry as defendant let them in several minutes later. The brown pill bottle was found on the top of a shelf in a closet and the gun was found under the cushion of a couch. There is no evidence that the parole officers exceeded the scope of their authority in their search.
Defendant owned the home in which the search occurred. Although he argued at trial that he did not live in the house, male clothing was found and defendant was the only one in the residence at the time of the search. He exercised control over the house by locking the doors when the parole officers approached the house. Obviously, defendant had control over the house and its contents.
Finally, the search of defendant's home was not a subterfuge for a police investigation. The parole officers testified that they often conducted routine visits or checks on parolees and that they called the Sheriff's Office for back up only when they encounter suspected criminal activity.
Considering the totality of the circumstances, we find that the trial court did not err in denying defendant's motion to suppress.

Admission of other crimes evidence
In this assignment of error, defendant alleges that the trial court erred in allowing into evidence the cocaine and crack pipe seized from parolee Scott; Scott's testimony about purchasing the cocaine from defendant; detailed testimony about the search with the drug dog; testimony about the pill bottle's seizure; and all of the remainder of the testimony about drugs. Defendant asserts that this is evidence of other crimes, wrongs or acts which are not related to or an integral part of the act or transaction and thus inadmissible under La. C.E. art. 404(B)(1).
Though generally inadmissible, evidence of other crimes, wrongs or acts may be introduced when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E.art. 404(B)(1); State v. Coates, 27,287 (La.App.2d Cir. 09/27/95), 661 So.2d 571, writ denied, 95-2613 (La.02/28/95), 668 So.2d 365. This rule of law was formerly known as "res gestae." The Louisiana Supreme Court has approved of the admission of other crimes evidence when it is related to and intertwined with the charged offense to such an extent that the state could not present its case without reference to it. State v. Brewington, 601 So.2d 656 (La.1992).
In State v. Moore, 26,329 (La.App.2d Cir. 08/17/94), 642 So.2d 679, this court held that marijuana and a crack pipe found during a traffic stop were admissible in the defendant's trial even though he was only charged with possession of a firearm by a convicted felon. In State v. Moore, the defendant was a passenger in a car stopped for traffic violations. *1176 The defendant began to drink from an open beer can in front of the officer, who immediately placed him under arrest for violation of the city's open container law. The officer conducted a quick search of the defendant and found a small clear plastic bag containing marijuana. A more thorough search of the defendant turned up a .22 caliber derringer. The officer then searched the front passenger area where the defendant had been seated and found a crack pipe with cocaine residue.
In State v. Moore, supra, this court found that the evidence formed an inseparable link in the continuous chain of events leading to the discovery of the revolver and thus was admissible. Id. at 683.
Similarly, in the present case, the cocaine and crack pipe seized from Scott and Scott's statement explained the officers' motivation for searching defendant's home. Further, the search for the brown pill bottle was part of the continuous chain of events and was used to complete the story of the discovery of the weapon.
In addition, a person in the business of distributing illegal substances or contraband requires some form of protection. It follows that such an entrepreneur would possess a firearm. This type of evidence is a factor relevant to a determination of the ultimate question of whether it was defendant who possessed the firearm. The trial court properly allowed this evidence.
This assignment of error is meritless.

Denial of motion for mistrial
Prior to trial, a Prieur hearing was held and the trial court determined that evidence of defendant's prior convictions would not be admissible unless defendant took the stand, with the exception of the conviction upon which the present charge was based. During the state's direct examination of Officer Thomason, the following exchange occurred:
Q. Ms. Thomason, was (the defendant) your parolee?
A. Yes, he was.
Q. For what offense was he under your supervision?
A. For, in Richland Parish, it was for distribution of cocaine for which he was convicted in October of '91 and I also have him on parole for a case in Texas for, uh ...
At this time, defendant objected and, outside the presence of the jury, moved for a mistrial based on Officer Thomason's remark about a prior conviction that had previously been held inadmissible. The trial court denied the motion for mistrial and defendant asked that an admonition not be given to the jury as it would merely serve as a "red flag."
La.C.Cr.P. art. 770(2) provides for a mandatory mistrial when a remark or comment is made within the hearing of the jury by the judge, district attorney or a court official concerning another crime committed or alleged to have been committed by the defendant. Because Officer Thomason, a law enforcement officer, is not a judge, district attorney or court official, this article is inapplicable. State v. Harper, 430 So.2d 627 (La.1983); State v. Harris, 625 So.2d 228 (La.App. 2d Cir.1993).
However, La.C.Cr.P. art. 771(2) provides that a judge shall properly admonish the jury to disregard a remark or comment which is irrelevant or immaterial and is such that might prejudice the defendant when the comment is made by a witness or person other than a judge, district attorney or court official regardless of whether the comment is within the scope of C.Cr.P. art. 770. A mistrial may be granted when an admonition is not sufficient to ensure the defendant a fair trial.
A mistrial is a drastic remedy and is warranted only when the trial error results in substantial prejudice to the defendant sufficient to deprive him of a fair trial. State v. Harris, supra. The trial court has the discretion to grant a mistrial or give an admonishment under article 771.
The statement about defendant's parole status in Texas was not deliberately solicited by the district attorney. Although responsive to the prosecutor's question, Officer Thomason provided more information than expected. Her answer was spontaneous and was not a deliberate attempt to prejudice *1177 defendant. Furthermore, the answer was ambiguous and incomplete. Finally, defendant specifically requested that the trial court not admonish the jury.
Under these circumstances, we find that the officer's brief statement concerning defendant's parole status in Texas did not prejudice the jury to such an extent that defendant was denied a fair trial.
This assignment is without merit.[2]

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.
NOTES
[1] As for defendant's argument that the parole officers did not have the authority to search parolee Scott because they were not his assigned parole officers, we note that there was no evidence presented at the motion to suppress hearing as to who was responsible for supervising Scott. At trial, Officer Thomason stated that she knew two of the individuals in the yard as she had supervised them. Defendant did not question Officer Thomason as to which two parolees she had supervised or whether she was presently supervising them. There is no information in this record to support defendant's allegation; however, as stated above, four known felons were together and the officers knew that Scott, defendant and another of the group were on parole.
[2] Defendant's assignment of error no. 1, relating to challenges for cause, was specifically abandoned as it was not briefed. Therefore, it will not be addressed.